Steven R. COX, Respondent,

v.

DIRECTOR OF REVENUE, Appellant.

No. SC 84714.

Supreme Court of Missouri,
En Banc.

March 4, 2003.

Jeremiah W. (Jay) Nixon, Atty. Gen., James R. Layton, State Solicitor, James A. Chenault, III, General Counsel, Jefferson City, for Appellee.

Timothy R. Cisar, Lake Ozark, for Respondent.

1. All statutory references are to RSMo Supp.

DUANE BENTON, Judge.

The circuit court ruled that the Director of Revenue improperly suspended the driving privileges of Steven R. Cox. The Director appeals. After opinion by the Court of Appeals, this Court granted transfer. *Mo. Const. art. V, sect. 10.* Reversed and remanded.

On Saturday, August 15, 1998, at 10:20 p.m., a police officer discovered Cox sleeping or unconscious, sitting in the driver's seat behind the wheel of a vehicle, in the parking lot of a gas station. Cox was the only person in or around the vehicle. The keys were in the ignition, and the motor was running. Seeing the shift lever in "park," the officer knocked on the window.

Awaking, Cox lowered the window. He had a strong odor of an intoxicating beverage on his breath. His eyes were very bloodshot and watery, and he appeared disoriented. The officer noticed a glass of brown liquid between his legs. At the officer's request, Cox turned off the ignition, exited the vehicle, and tried but failed sobriety tests. The officer arrested him for driving while intoxicated. After *Miranda* warnings, Cox answered "Yes" to the form question, "Were you operating the vehicle?". A subsequent breath test revealed a blood alcohol content of .18 of one percent.

The Director suspended Cox's driving privileges pursuant to section 302.505, RSMo Supp.1997.[1] Cox requested a trial de novo in circuit court. The parties stipulated to admission of the Director's records—including the police reports—subject to Cox's objection that they did not show probable cause for the arrest. At the circuit court, Cox argued that the officer did not observe him "operating" or "driving" the vehicle.

1997, unless otherwise indicated.

Under section 302.505, the Director shall suspend a driver's license if the arresting officer had probable cause to believe the person was driving a vehicle with a blood alcohol concentration of at least ten hundredths (.10) of one percent. See *Riche v. Director of Revenue*, 987 S.W.2d 331, 336 (Mo. banc 1999).

The term "driving" in section 302.505 is defined in section 577.001.1. *Dalton v. McNeill*, 713 S.W.2d 26, 28–29 (Mo.App. 1986). The meaning of *driving* is "physically driving or operating a motor vehicle." *Section 577.001.1.*

■ Until 1996, the statutory definition was "physically driving or operating or being in actual physical control of a motor vehicle." *Section 577.001.1 RSMo 1994.* In 1996, the General Assembly removed the phrase "or being in actual physical control of." *1996 Mo. Laws 593, 617.* When the legislature amends a statute, that amendment is presumed to change the existing law. *Hagan v. Director of Revenue*, 968 S.W.2d 704, 706 (Mo. banc 1998). By removing "actual physical control" from the statute, the legislature narrowed its scope. A person is not subject to section 302.505 by simply being in actual physical control of a vehicle while intoxicated. See *Weiland v. Director of Revenue*, 32 S.W.3d 628, 631 (Mo.App. banc 2000); *Baptist v. Lohman*, 971 S.W.2d 366, 368 (Mo.App.1998). The legislature meant to negate the effect of this Court's holding that "actual physical control" occurs when:

> even though the machine merely stands motionless, . . . a person keeps the vehicle in restraint or [is] in a position to regulate its movements.

*State v. O'Toole*, 673 S.W.2d 25, 27 (Mo. banc 1984), *adopting the definition from Kansas City v. Troutner*, 544 S.W.2d 295, 300 (Mo.App.1976).

■ The legislature's re-enactment of the terms "driving" and "operating" in section 577.001 emphasizes that both words have distinct meanings. See *Missouri Property & Cas. Ins. Guar. Co. v. Pott Industries*, 971 S.W.2d 302, 305 (Mo. banc 1998). These words are not further defined in chapters 302 or 577. This Court ascertains the legislature's intent by considering the plain and ordinary meaning of the words in the statute. *Hadlock v. Director of Revenue*, 860 S.W.2d 335, 337 (Mo. banc 1993). Absent a definition in the statute, the plain and ordinary meaning is derived from the dictionary. *Ste. Genevieve School District R–II v. Board of Aldermen of City of St. Genevieve*, 66 S.W.3d 6, 11 (Mo. banc 2002).

The dictionary defines *drive* as "to guide a vehicle along or through." *Webster's Third New International Dictionary* 692 (1993). In this case, Cox was not driving the vehicle, which was motionless. He did not guide it along or through anything.

■ The dictionary defines *operate* as "to cause to function usually by direct personal effort: work (~ a car)." *Id.* at 1581. Cox meets the bright-line test to operate a car, as he caused its motor to function. Once the key is in the ignition, and the engine is running, an officer may have probable cause to believe that the person sitting behind the steering wheel is operating the vehicle. *Stewart v. Director of Revenue*, 702 S.W.2d 472, 475–76 (Mo. banc 1986); *State v. Mitchell*, 77 S.W.3d 637, 640 (Mo.App.2002); *Mayberry v. Director of Revenue*, 983 S.W.2d 628, 632 (Mo.App.1999). This is true even if that person is sleeping or unconscious. *State v. Wiles*, 26 S.W.3d 436, 441 (Mo.App.2000); *Delzell v. Lohman*, 983 S.W.2d 633, 634–35 (Mo.App.1999); *Weiland v. Director of Revenue*, 73 S.W.3d 60, 63 (Mo.App.2002).

In this case, the key was in the ignition, the engine was running, and Cox was sit-

ting behind the steering wheel. Based on these stipulated facts, the officer had probable cause to believe that Cox was operating the vehicle. See *Hinnah v. Director of Revenue*, 77 S.W.3d 616, 621 (Mo. banc 2002). As no other issues were contested, the Director properly suspended Cox's license. *Id.* at 620. The circuit court erroneously declared and applied the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ To the extent that *State v. Cross*, 34 S.W.3d 175[3], [5], [8] (Mo.App.2000), and *Hoyt v. Director of Revenue*, 37 S.W.3d 356[5] (Mo.App.2000), hold that the act of turning off the ignition is "operating," they are overruled as that act causes a car *not* to function. In addition, cases interpreting the pre 1996 law should not be relied upon to define "operating" because they do not separately define that term. See, e.g., *State v. Hughes*, 978 S.W.2d 24, 26 (Mo.App.1998); *Krienke v. Lohman*, 963 S.W.2d 11, 12 (Mo.App.1998); *State v. Hoyt*, 922 S.W.2d 443, 447–48 (Mo.App.1996); *Gleason v. Director of Revenue*, 859 S.W.2d 189, 190–91 (Mo.App. 1993); *Wilcox v. Director of Revenue*, 842 S.W.2d 240, 242–43 (Mo.App.1992); *Stoltz v. Director of Revenue*, 816 S.W.2d 711, 714 (Mo.App.1991); *State v. Hollis*, 800 S.W.2d 69, 71 (Mo.App.1990); *State v. Dey*, 798 S.W.2d 210, 212 (Mo.App.1990); *State v. Block*, 798 S.W.2d 213, 216 (Mo.App. 1990); *State v. Nickerson*, 763 S.W.2d 716, 717 (Mo.App.1989); *State v. Hoeber*, 737 S.W.2d 484, 486 (Mo.App.1987); *Taylor v. McNeill*, 714 S.W.2d 947, 948 (Mo.App. 1986); *State v. Liebhart*, 707 S.W.2d 427, 429–30 (Mo.App.1986).

The judgment is reversed, and the case remanded.

LIMBAUGH, C.J., STITH and PRICE, JJ., concur.

WHITE, J., dissents in separate opinion filed.

WOLFF and TEITELMAN, JJ., concur in opinion of WHITE, J. WOLFF, J., dissents in separate opinion filed.

RONNIE L. WHITE, Judge, dissenting.

I respectfully dissent.

The record establishes that Respondent was sitting asleep in a parked car in a parking lot, that he had been drinking alcohol and was intoxicated while in the parked car, and that the car's engine was running with its gear set in park.

As detailed by the majority, the question here is whether those actions amount to "driving," [1] defined as "physically driving or operating a motor vehicle." [2] Answering that question requires consideration of the prior version of the statute that, until 1996, carried a more expansive definition of "driving," to wit: "physically driving or operating or being in actual physical control of a motor vehicle." No doubt, as noted by the majority, with the deletion of "being in actual physical control," the legislature intended to narrow the definition of "driving."

The majority further observes, correctly, that the deletion of that phrase negated a determination of "driving" where: "even though the machine merely stands motionless, ... a person keeps the vehicle in restraint or is in a position to regulate its movements."

The majority then appears to ignore its own observation. For, the facts presented in this case fit quite neatly within that definition: Respondent kept in restraint a

---

1. Section 302.505.

2. Section 577.001.1 (statutory definition of "driving").

machine that merely stood motionless, although he was in a position to regulate its movement. More importantly, the discrete definition of "actual physical control," quoted above, originated in a case with facts that are conspicuously similar to those at hand:

> The defendant was found by a police officer fast asleep behind the wheel of his camper-truck on a private parking lot adjacent to the city street with the engine still active and the transmission engaged in the park position. The head of the defendant was tucked upon his chest, right arm draped over the steering wheel, and his right hand clutched $200 in currency. The defendant awoke only after some physical effort by the officer to revive him to consciousness.[3]

Even recognizing that the legislature narrowed the scope and negated the effect of being in a position to regulate a machine that is standing motionless, the majority engages in statutory interpretation that ignores its own research.

I take no issue with the majority's interpretation of "drive." But the 1996 amendment demonstrates that the legislature intended to de-criminalize and remove administrative consequences in situations where an intoxicated person merely sat behind the wheel of a motionless vehicle, even where the driver is in a position to regulate its movements. The majority's interpretation of "operate" ignores that intent.

"When the legislature amends a statute, it is presumed to have intended the amendment to have some effect."[4] The "legislature's action of repeal and enactment is presumed to have some substantive effect such that it will not be found to be a meaningless act of housekeeping."[5] Because the majority opinion effectively interprets "operate" to cover situations that used to apply under the "actual physical control" term, it is contrary to legislative intent. To give effect to the legislative amendment, "operating" must mean more than keeping restrained a motionless vehicle, even while in a position to operate it.

For those reasons, I would affirm.

MICHAEL A. WOLFF, Judge, dissenting.

This is a close case and I appreciate the principal opinion's attempt to clarify the law as to what it means to operate a vehicle. But, on balance, I agree with Judge White's analysis.

No one wants a person in Cox's condition to drive. That means it should be lawful for him to get in his car, run the engine for heat or air-conditioning, and stay put. There is a risk to Cox of carbon monoxide poisoning when he opts to sleep in his car with the engine running. But that hazard is to him only.

The hazard the legislative change appears intended to avoid is the danger to the public of an intoxicated person actually driving a car. The next time an intoxicated person such as Cox is moved to start a

---

3. *Kansas City v. Troutner*, 544 S.W.2d 295, 296 (Mo.App.1976). The definition quoted from *Troutner* is firmly attached to the situation where an intoxicated person is seated in a parked but running vehicle; *see e.g., State v. Hoyt*, 922 S.W.2d 443 (Mo.App.1996); *Taylor v. McNeill*, 714 S.W.2d 947 (Mo.App.1986); *State v. O'Toole*, 673 S.W.2d 25, 27 (Mo. banc 1984).

4. *Wollard v. City of Kansas City*, 831 S.W.2d 200, 203 (Mo. banc 1992).

5. *Clair v. Whittaker*, 557 S.W.2d 236, 240 (Mo. banc 1977).

car engine for comfort, perhaps he should then crawl into the back seat for his sobering slumber.