Honorable Yvonne S. Wilson Representative, District 42 State Capitol, Room 115-B 201 West Capitol Avenue Jefferson City, MO 65101-6806
Dear Representative Wilson:
You have submitted the following question to our office:
 If a project (a) has previously been approved as a "redevelopment project" under the Real Property Tax Increment Allocation Redevelopment Act, Sections 99.800 et seq., RSMo ("TIF"), and (b) is receiving funding through "PILOTs" and "EATs" under TIF (but not "new state revenues" under TIF), does Section 99.960.8, RSMo, or any other provision of the Missouri Downtown and Rural Economic Stimulus Act, Sections 99.915 et seq., RSMo ("MODESA"), preclude that project from subsequently being approved as a "development project" under a MODESA "development plan" and receiving funding under the MODESA development plan through only the "state sales tax increment" and/or the "state income tax increment" under MODESA while still continuing to receive funding through "PILOTs" and "EATs" under TIF?
The Missouri Downtown and Rural Economic Stimulus Act ("MODRESA") was enacted by Conference Committee Substitute for Senate Substitute for Senate Committee Substitute for House Committee Substitute for House Bill 289, 92nd General Assembly, First Regular Session (2003). That legislation provides for MODRESA to be codified at Sections 99.915 to99.1060, RSMo.[1]
MODRESA is a complex and detailed law and we will not undertake to summarize it fully in this opinion. For purposes of this opinion, it suffices to note the following. The legislation authorizes a municipality to establish development financing to aid certain development projects. See Sections 99.918, 99.954, and 99.957. The legislation in essence allows certain new local sales, earnings, and property tax revenues created by a development project to be placed in a special fund and used to finance certain public infrastructure and related costs in aid of the project. Id. In addition, the statute authorizes a portion of state income and sales tax revenues created by the development project — the "state sales tax increment" and "state income tax increment" — to be placed into the State Supplemental Downtown Development Fund, which is also created by MODRESA. See Sections 99.918
and 99.963. A municipality may apply to the Department of Economic Development for a disbursement from the State Supplemental Downtown Development Fund to pay for certain costs of a development project. Section 99.960. The legislation establishes a process in which the Department of Economic Development provides an analysis and recommendation to the Missouri Development Finance Board, which in turn makes a determination regarding the application for a disbursement from the Fund. Id. Such disbursements are referred to in MODRESA as "state supplemental downtown development financing." Id.
Your opinion request addresses the relationship between state supplemental downtown development financing and financial assistance under another state statute, the Real Property Tax Increment Allocation Redevelopment Act, Sections 99.800 to 99.865, RSMo 2000. That statute — often referred to as the tax increment financing ("TIF") statute — is also complex. It suffices here to note that it authorizes municipalities to take steps leading to so-called tax increment financing for certain redevelopment projects. That financing is accomplished using mechanisms referred to in the statute as "payments in lieu of taxes" ("PILOTs") and "economic activity taxes" ("EATs").See Sections 99.805(4) and (10) and 99.845, RSMo 2000.
You specifically ask about the effect of Section 99.960.8, which provides:
 A development project approved for state supplemental downtown development financing may not thereafter elect to receive tax increment financing pursuant to the real property tax increment allocation redevelopment act, sections 99.800 to 99.865, and continue to receive state supplemental downtown development financing pursuant to sections 99.915 to 99.980.
(Emphasis added.) By its terms, this provision would force a development project to forgo state supplemental downtown development financing if it first received approval for that financing and then subsequently elected to receive tax increment financing pursuant to the TIF statute. But your opinion request assumes the opposite sequence of events: you ask what happens with respect to a project that first receives financing pursuant to the TIF statute, then subsequently receives approval for state supplemental downtown development financing under MODRESA. Section 99.960.8 does not apply to the circumstance identified in your request.
In interpreting a statute, Missouri courts look first to the plain and ordinary meaning of the words enacted by the General Assembly. Cox v.Dir. of Revenue, 98 S.W.3d 548, 550 (Mo.banc 2003). In Section 99.960.8, the legislature provided that a development project approved for state supplemental financing downtown development under MODRESA may not "thereafter elect" to receive financing under the TIF statute and continue to receive the state MODRESA financing. The word "thereafter" means "after that." Webster's Third New International Dictionary 2372 (7th ed. 1993). The word "elect" means "to make a selection of: choose." Id. 731. Accordingly, Section 99.960.8 establishes that after a development project is approved for state supplemental downtown development financing, that project may not choose to receive financing under the TIF statute and keep its state MODRESA financing. But the terms chosen by the General Assembly do not apply in a situation where a project is receiving financing under the TIF statute before it has been approved for state supplemental downtown development financing.
It bears noting, though, that Section 99.960.8 does not ensure that state supplemental downtown development financing will be available if a project has first obtained financing under the TIF statute. Instead, Section 99.960.8 is simply silent on whether state supplemental downtown development financing would be available in that circumstance.
In that vein, you also asked whether any other provision of MODRESA would preclude a project that is already receiving financing pursuant to the TIF statute through PILOTs and EATs from later obtaining state supplemental downtown development financing and keeping its TIF funding. There are several provisions of MODRESA that may ultimately preclude such a combination of financing. For example, one prerequisite for obtaining state supplemental downtown development financing for a development project is "that the development area would not be reasonably anticipated to be developed without the appropriation of" the state sales and/or income tax revenues created by the project. Section 99.960.1(5). Seealso Section 99.918(19). Thus, to the extent that the receipt of financing pursuant to the TIF statute through PILOTs and EATs connotes that the development area in question is already being developed without state supplemental downtown development financing, Section 99.960.1(5) could preclude such financing.
Further, Section 99.954.7 provides:
 State supplemental downtown development financing shall not be used for retiring or refinancing debt or obligations on a previously publicly financed redevelopment project without express approval from the director of the department of economic development and the Missouri development finance board. No approval shall be granted unless the application for state supplemental downtown development financing contains development projects that are new projects which were not a part of the development projects for which there is existing public debt or obligations.
This provision, too, could preclude a combination of state supplemental downtown development financing and financing through the TIF statute in certain circumstances.
More broadly, Section 99.960.3 provides that state supplemental downtown development financing is available only if approved by the Missouri Development Finance Board. So Section 99.960.3 would preclude such financing if the Missouri Development Finance Board determined that the statutory provisions noted above or other provisions of MODRESA precluded state supplemental downtown development financing, or if that Board otherwise determined that the combination of state supplemental downtown development financing and TIF funding was not appropriate.
In sum, it would depend on the circumstances whether provisions of MODRESA other than Section 99.960.8 would preclude a project that is already receiving financing pursuant to the TIF statute through PILOTs and EATs from later obtaining state supplemental downtown development financing and keeping its funding through TIF. Accordingly, your question cannot be answered in the abstract.
 CONCLUSION
The provision of the Missouri Downtown and Rural Economic Stimulus Act ("MODRESA") to be codified at Section 99.960.8, RSMo, does not preclude a project that has been designated as a redevelopment project under the Real Property Tax Increment Allocation Redevelopment Act, Sections 99.800 etseq., RSMo 2000 ("the TIF statute"), and is receiving funding through "payments in lieu of taxes" and "economic activity taxes" under that statute, from subsequently being approved for state supplemental downtown development financing under MODRESA. Whether another provision of MODRESA would preclude such a combination of financing would depend on the circumstances.
Very truly yours,
 JEREMIAH W. (JAY) NIXON Attorney General
[1] We identify the provisions of MODRESA by reference to the sections of the Missouri Revised Statutes in which the legislation indicates they are to be codified.