Honorable Chuck Gross State Senator, District 23 State Capitol Building, Room 434 Jefferson City, MO 65101
Dear Senator Gross:
You have submitted a request to this office for an opinion in response to the following questions:
 Can the St. Louis Post-Dispatch obtain a copy of the voter registration electronic media (CD-ROM) pursuant to their Chapter 610 RSMO request or may the Election Authority refuse under Chapter 115.157, RSMo to provide such CD-ROM or copy and elect to give CD-ROM or paper access only in the office of the Election Authority?
 Pursuant to § 115.158, should the Election Authority deny such request on the grounds it is for a "commercial purpose" in that the Post is not making the request for a story, but to build a database to check facts?
Section 115.157, RSMo Cum. Supp. 2002,[1] governs the dissemination of voter information maintained in electronic format by county election officials. It provides, "Except as provided in subsection 2 of this section, all election authorities shall make the information described in this section available pursuant to chapter 610, RSMo. Any election authority who fails to comply with the requirements of this section shall be subject to the provisions of chapter 610, RSMo."[2]
The information described in Section 115.157 consists of:
 [E]lectronic media or printouts showing unique voter identification numbers, voters' names, dates of birth, addresses, townships or wards, and precincts [broken down into specified fields, and] . . . the names, dates of birth and addresses of voters, or any part thereof, within the jurisdiction of the election authority who voted in any specific election, including primary elections, by township, ward or precinct, provided that nothing in this chapter shall require such voter information to be released to the public over the Internet.
Section 115.158 provides for the creation of a central voter registration database housed in the Secretary of State's Office, and provides that the information contained therein is public information, with the following limitation:
 Any information contained in any state or local voter registration system, limited to the master voter registration list or any other list generated from the information, subject to chapter 610, RSMo, shall not be used for commercial purposes; provided, however, that the information can be used for elections, for candidates, or for ballot measures, furnished at a reasonable fee. Violation of this section shall be a class B misdemeanor.
Both Section 115.157 and Section 115.158 refer to Chapter 610, which is commonly referred to as the Sunshine Law. The Sunshine Law provides, "Except as otherwise provided by law, . . . all public records of public governmental bodies shall be open to the public for inspection and copying as set forth in sections 610.023 to 610.026, . . . ." Section 610.011.2.
In interpreting statutes, we ascertain the legislature's intent by considering the plain and ordinary meaning of the words in the statute.Cox v. Dir. of Revenue, 98 S.W.3d 548, 550 (Mo.banc 2003). By their plain terms, the statutes noted above demonstrate the legislature's intent that the information described in Section 115.157 is to be made available to the public unless a provision of law otherwise provides for that information to be closed. As discussed below, we find no provision that would allow for such closure.
In this vein, the Sunshine Law states: "It is the public policy of this state that meetings, records, votes, actions, and deliberations of public governmental bodies be open to the public unless otherwise provided by law. Sections 610.010 to 610.028 shall be liberally construed and their exceptions strictly construed to promote this public policy." Section 610.011. In this context, the limitation on use of electronically maintained voter registration information for commercial purposes contained in Section 115.158 is an "exception" to the general rule that governmental records are open to the public, and as such it must be construed strictly.
We have reviewed a copy of the Post-Dispatch's written request for the voter registration database. It represents that neither the reporter making the request, nor her employers would use the information for a "commercial purpose." The letter represents that the Post-Dispatch
intends to use the information "to check spellings on names, and double check ages, for example. The data would not be used for advertising purposes or solicitation."
Neither the facts presented in your opinion request, nor thePost-Dispatch's letter requesting the voter registration records indicate that the request is for information other than that described in Section115.157 (e.g., registrants' Social Security numbers; information closed by court order in accordance with Section 115.157.2. Section 115.157, therefore, contains no justification for failing to provide the requested records. Similarly, there are no provisions in the Sunshine Law that would justify closure of those records. See Section 610.021. The only remaining question, therefore, is whether the Election Authority may deny a request for voter registration data based upon his conclusion that fact checking by a news gathering organization is a "commercial purpose."
While there is no dispute that the Post-Dispatch is a for-profit enterprise, the courts frequently distinguish editorial functions from commercial functions. See, e.g., Litzinger v. Pulitzer Publ'g Co.,356 S.W.2d 81 (Mo. 1962) (corporate newspaper publisher was not considered to be transacting its "usual and customary business" for purposes of venue statute in a county in which it maintained an office and a reporter). Cf. Doe v. TCI Cablevision, No. 84856, slip op., (Mo.banc July 29, 2003) (use of a person's identity in news, entertainment, and creative works enjoy a higher level of protection under the first amendment than use for commercial purposes, such as advertising goods or services).
The penalties for violation of Sections 115.157 and 115.158 are instructive as well. The statutes do not penalize the election authority for disseminating information improperly, nor do they provide for an appeal of an adverse decision by an election authority. Instead, Section115.158 provides for a criminal penalty for those who actually use the information improperly, and under the terms of Section 115.157, the election authority is subject to the penalties provided for in Chapter 610. The only penalty created by Chapter 610 is a penalty for failing to make public records available.
Based on these considerations, we do not believe there is a basis for declining to provide the records requested by the Post-Dispatch in the circumstances identified in your opinion request.
Subsequent to your request, the Governor signed Conference Committee Substitute for Senate Substitute for Senate Committee Substitute for House Substitute for House Bill No. 511, 92nd General Assembly, First Regular Session (2003). House Bill 511, which took effect August 28, 2003, amends both Sections 115.157 and 115.158, and provides new legislative guidance for the interpretation of the term "commercial purposes." The new language in Section 115.158 reads in relevant part as follows:
 For purposes of this section, "commercial purposes" means the use of a public record for the purpose of sale or resale or for the purpose of producing a document containing all or part of the copy, printout, or photograph for sale or the obtaining of names and addresses from public records for the purpose of solicitation or the sale of names and addresses to another for the purpose of solicitation or for any purpose in which the purchaser can reasonably anticipate the receipt of monetary gain from the direct or indirect use of the public record.
House Bill 511.
Our opinion does not change under this new language. ThePost-Dispatch has made a specific representation that it will not use voter registration data for "solicitation," and we believe that any theory that the Post will enjoy even an indirect monetary gain from increased circulation based on better fact-checking through the use of the data is speculative at best. Particularly in light of the requirement that exceptions to the Sunshine Law's policy of openness be strictly construed to promote openness, we do not understand the phrase "commercial purposes" to include "fact checking" of the editorial content of a newspaper.
Your request also appears to focus on whether an election authority may elect to provide access to the information described in Section 115.157
only in its offices and thus decline to provide a copy of such information to the Post-Dispatch in CD-ROM format. We addressed a substantially identical issue in Opinion No. 153-1998, Fisher, where we concluded that a county was required to provide records in microfilm format where it had the capability to do so. Consistent with that opinion, we conclude that the election authority is required to provide the records in CD-ROM format if it is requested to do so and has the capability to do so.
 CONCLUSION
It is the opinion of this office that an election authority may not close records compiling voter registration information described in Section 115.157, RSMo Cum. Supp. 2002, in response to a newspaper's request for such records on the basis that they would be used for "commercial purposes" as that term is used in Section 115.158, RSMo 2000, or Section 115.158 as amended by Conference Committee Substitute for Senate Substitute for Senate Committee Substitute for House Substitute for House Bill No. 511, 92nd General Assembly, First Regular Session (2003), where the newspaper has represented that it will not use the information for commercial purposes but instead will use it for fact-checking. The election authority must provide such records in CD-ROM format if so requested and if it has the capability to do so.
Very truly yours,
 JEREMIAH W. (JAY) NIXON Attorney General
[1] Citations to Section 115.157 are to RSMo Cum. Supp. 2002. Citations to other statutes are to RSMo 2000, unless otherwise indicated.
[2] Subsection 2 limits the dissemination of information in circumstances where a court has issued an order closing certain information in the registration record of an undercover law enforcement officer, a person in a witness protection program, or a victim of domestic violence. Section 115.157.2.