

# Missouri Court of Appeals

## Southern District

### Division Two

STATE OF MISSOURI,                    )
                                      )
    Plaintiff-Respondent,         )
                                      )
v.                                    )      No. SD33039
                                      )
RODWIN OJURM MAMMAH,                  )      **Filed:  Nov. 5, 2014**
                                      )
    Defendant-Appellant.          )


### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Calvin R. Holden, Circuit Judge

### <u>AFFIRMED</u>

After a bench trial, Rodwin Ojurm Mammah ("Defendant") was found guilty of felony driving while intoxicated ("DWI") and received a four-year suspended sentence. *See* sections 577.010 and 577.023.[1]  Defendant now appeals his conviction, contending that "the evidence failed to establish that [he] was under the influence of alcohol at the time he was operating the motor vehicle."[2]  Because the challenged factual proposition was supported by sufficient evidence, we affirm.

### Applicable Principles of Review

In reviewing the sufficiency of evidence in a bench trial of a criminal case, we apply the same standard of review as applied in a jury-tried case; we

---

[1] All statutory references are to RSMo Cum. Supp. 2010.

[2] Defendant concedes that the trial court could have found from the evidence adduced that he was intoxicated at the time the officers arrived and that he had "been driving the truck at some point" before that time.

determine whether the State presented sufficient evidence from which a trier of fact could have reasonably found the defendant guilty; and in so doing, we examine the evidence and inferences in the light most favorable to the verdict, ignoring all contrary evidence and inferences.

*State v. Brown*, 360 S.W.3d 919, 922 (Mo. App. W.D. 2012). "The credibility and weight of testimony are for the fact-finder to determine. The fact-finder may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case." *State v. Crawford*, 68 S.W.3d 406, 408 (Mo. banc 2002) (citation omitted). Where there is conflicting evidence, we presume that the fact-finder resolved the conflict in favor of the ultimate finding, and we defer to that resolution. *State v. Chaney*, 967 S.W.2d 47, 53 (Mo. banc 1998). The following summary of the relevant facts is presented in accordance with these principles.

**Facts and Procedural Background**

On February 18, 2012, Springfield police officer Zachary Schlup responded to an early morning[3] report that a vehicle was at an intersection with the driver "asleep behind the wheel." When Officer Schlup arrived at the intersection, he observed Defendant inside a four-door truck that was stopped in the inside lane of traffic. The truck's engine was running, and Officer Schlup could see that the vehicle "was still in drive." Although Defendant's "eyes were closed, his head was resting on his chest, and he was drooling[,]" Defendant "was still applying pressure to the brakes."

Officer Schlup "banged on the window several times and tried to yell at him," but Defendant did not respond. When another officer arrived and watched Defendant, Officer Schlup turned on his patrol car's siren and air horn. Defendant "still didn't wake up." After

---

[3] State's Exhibit No. 2, which contained two video files recorded from a camera in a patrol car that arrived after Officer Schlup, was admitted into evidence. The time reflected on the recording indicated that the patrol car arrived at the scene at 2:08 a.m.

2

an ambulance arrived, its air horns were also activated, but Defendant remained asleep. Officer Schlup finally "shook the entire vehicle and that jarred [Defendant] awake."

Officer Schlup instructed Defendant "to roll down the window," and Defendant "rolled down the back driver's side window, not his driver's window." The officer reached in, unlocked the driver's "door, opened the door, put the vehicle in park, and turned off the ignition." Officer Schlup asked Defendant "if he was okay," but Defendant did not respond. Officer Schlup asked Defendant to exit the vehicle. As Defendant exited the truck, he asked, "Where am I?" Officer Schlup then smelled a "fairly strong" "odor of intoxicants coming from [Defendant's] breath as he spoke." Defendant also said that "he had been drinking at a friend's house earlier." Based on his training and experience, Officer Schlup believed Defendant to be intoxicated.

Springfield police officer Derrick Wong took over the investigation after Defendant got out of the truck. Because Defendant had trouble walking, Officer Wong "physically escort[ed]" him from the roadway. Officer Wong observed that Defendant smelled of alcohol, his eyes "were bloodshot and watery[,]" and he displayed all six indicators of intoxication on the horizontal gaze nystagmus test. At that point, Defendant "decided he didn't want to do any more tests[,]" and he kept asking Officer Wong "not to complete [his] DWI investigation." Officer Wong also believed that Defendant was intoxicated, and he placed Defendant under arrest for DWI. On the way to the jail, Defendant indicated that he thought he had been at a location about a mile away from where the officers actually found him. After arriving at the jail, Defendant declined to provide a sample of his breath.

Defendant testified in his own defense at trial. Defendant said the last thing he remembered before he woke up was "waiting for the light" at the intersection. He stated that

3

he had consumed "two beers" the night before. He admitted that he repeatedly told the officer to please not give him a DWI. After deliberation, the trial court found Defendant guilty of felony DWI, and he was later sentenced as described above.

**Analysis**

Defendant argues that his conviction must be reversed because there was "no evidence of how long [Defendant] had been sitting behind the wheel, asleep[,]" or how much time passed between the initial report of a sleeping driver and Officer Schlup's discovery of Defendant asleep in his truck. Because his "truck could have been idling for hours before anyone notified police[,]" Defendant argues that "[t]here was simply no evidence that [Defendant] was intoxicated at the time he fell asleep at the stop light." Defendant's argument is based upon a faulty premise -- that "[t]he element of the offense of [DWI] missing from the State's proof is that [Defendant] was intoxicated *while* he was *driving* the truck." (Second italics ours.)

Section 577.010.1 provides that "[a] person commits the crime of [DWI] if he operates a motor vehicle while in an intoxicated or drugged condition." For purposes of Chapter 577, "the term '**drive**', '**driving**', '**operates**' or '**operating**' means physically driving or operating a motor vehicle." Section 577.001.1. As the term "operating" is not defined in the statute, we look to the dictionary for its meaning. ***Cox v. Dir. of Revenue***, 98 S.W.3d 548, 550 (Mo. banc 2003). "The dictionary defines *operate* as 'to cause to function usually by direct personal effort: work (~ a car).'" ***Id.*** (quoting ***Webster's Third New International Dictionary*** 1581 (1993)).

As the State correctly argues in its brief, a vehicle can be "operated" by a person "even if that person is sleeping or unconscious." ***Id.*** For example, the ***Cox*** opinion cited

4

*State v. Wiles*, 26 S.W.3d 436, 438 (Mo. App. S.D. 2000), where the officer found the defendant unresponsive in a vehicle parked by a garbage dumpster with its lights on and the "engine running at a fast idle." The defendant was "slumped over the steering wheel on the driver's side[.]" The vehicle was in "park," and the defendant had one foot on the gas pedal and the other on the brake pedal. *Id.* We observed in *Wiles* that the "[d]efendant was engaging the machinery of his vehicle and was in a position to manipulate its movement." *Id.* at 441. As a result, the trial court did not err in sentencing the defendant "for 'operating' a motor vehicle while intoxicated[.]" *Id.*

In *State v. Mitchell*, 77 S.W.3d 637, 639 (Mo. App. W.D. 2002), an officer approached the defendant's vehicle after observing it "partially on the shoulder of the highway and partially on the grass, and its brake lights were on." The officer found that the defendant appeared to be asleep, but the engine was running, the defendant's "foot was on the brake, and the transmission was in the 'drive' position." *Id.* The Western District rejected an assertion that this could not be "operating" on the basis that the phrase "'actual physical control' [had been deleted] from the definition of 'operating' in [section] 577.001.1, when [the legislature] amended this section in 1996." *Id.* at 640. The court pointed out that "[the defendant's] actions [went] beyond merely being in actual physical control of his vehicle." *Id.* The court observed that "[b]ecause [the defendant's] transmission was in 'drive' and not 'park,' as was the driver's transmission in *Wiles*, the circumstances here are even more compelling than those deemed sufficient to constitute operating in *Wiles*." *Id.* at 641. *See also State v. Mitchell*, 203 S.W.3d 246, 252 (Mo. App. S.D. 2006) (finding sufficient evidence of operating when the vehicle's "motor was running, the transmission

5

was in reverse and the only thing keeping the vehicle from rolling backwards under power was [the d]efendant's foot on the brake pedal").[4]

Here, Defendant's truck was in a traffic lane, it was "still in drive[,]" the engine was running, and Defendant "was still applying pressure to the brakes." Added to Defendant's concession on appeal that there was evidence that he was intoxicated when officers arrived, these facts are sufficient to allow a reasonable fact-finder to find beyond a reasonable doubt that Defendant was operating the truck while in an intoxicated condition when Officer Schlup approached it.

Defendant's point is denied, and the judgment is affirmed.


DON E. BURRELL, J. - OPINION AUTHOR

MARY W. SHEFFIELD, P.J. - CONCURS

GARY W. LYNCH, J. - CONCURS

---

[4] Defendant cites four cases in which the evidence was held insufficient to support a DWI conviction. Assuming that these cases all correctly apply the law and were not influenced by the former (now defunct) "equally valid inferences rule," they are factually distinguishable. *See* ***State v. Hatfield***, 351 S.W.3d 774, 778 (Mo. App. W.D. 2011) (the defendant was found "near his vehicle," but there was no "evidence establishing when he last operated it"); ***State v. Davis***, 217 S.W.3d 358, 359-61 (Mo. App. W.D. 2007) (the defendant was located a couple of blocks from his wrecked vehicle and he admitted crashing the car, but there was no evidence of the time elapsing after the crash, when the defendant began drinking, or how much he drank); ***State v. Chambers***, 207 S.W.3d 194, 198-99 (Mo. App. S.D. 2006) (the defendant was found "asleep behind the wheel" and the windshield wipers were on, but the engine was not running and there was no evidence produced that the engine had been running recently); and ***State v. Thurston***, 84 S.W.3d 536, 538, 540 (Mo. App. S.D. 2002) (the defendant was removed from a vehicle found in a ditch, but there was no evidence that the defendant had been behind the wheel or that the engine was running or had been running recently).