

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | **WD86719** |
| V. | ) | |
| | ) | **OPINION FILED:** |
| BRIAN L. MEFFORD, | ) | **MARCH 18, 2025** |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Dekalb County, Missouri**
The Honorable Ryan W. Horsman, Judge

Before Special Division:  Cynthia L. Martin, Presiding Judge, Gary D. Witt, Judge and
Zel Fischer, Special Judge

Brian L. Mefford ("Mefford") appeals from the trial court's judgment convicting him of driving while intoxicated as a habitual offender.  Mefford asserts that the trial court plainly erred in failing to declare a mistrial *sua sponte* following the State's references to Mefford's post-arrest silence.  Mefford also challenges the sufficiency of the evidence to prove beyond a reasonable doubt that Mefford operated a vehicle while in an intoxicated condition.  Finding no error, we affirm.

## Factual and Procedural Background[1]

On June 20, 2021, a Missouri State Highway Patrol trooper ("Trooper") was driving on Highway 6 in DeKalb County, Missouri when he observed "extremely bright lights" as he approached a hill. After cresting the hill, Trooper realized the light was coming from a Polaris RANGER all-terrain vehicle ("ATV") sitting in the ditch. Trooper stopped his patrol vehicle alongside the ATV, and saw Mefford sitting in the driver's seat slumped over the steering wheel, and a female ("Passenger") sitting in the passenger's seat. Trooper completed a U-turn and parked his patrol vehicle behind the ATV. The ATV's motor was running when Trooper approached Mefford and Passenger. Trooper observed that Mefford's eyes were bloodshot and glassy. Trooper asked Mefford for his driver license, and after fumbling with his wallet, Mefford handed Trooper a debit card. After Trooper returned the debit card to Mefford and asked again for his driver license, Mefford gave Trooper a DeKalb County concealed carry permit, which allowed Trooper to identify Mefford.

Trooper then asked Mefford to step out of the ATV. Mefford did so but stumbled and needed to use the ATV for balance. Trooper asked Mefford to sit inside the patrol car. Mefford struggled getting into the vehicle and needed to hold onto the patrol car for balance. While in the patrol car, Mefford displayed indicia of intoxication, including mumbled speech and a strong odor of intoxicants. In response to Trooper's questions, Mefford said that he and Passenger were going home, which Mefford said was

---

[1]We view the facts in the light most favorable to the verdict. *State v. Moore*, 687 S.W.3d 1, 4 n.2 (Mo. App. W.D. 2024).

approximately a mile and a half to the west. Mefford's home was, in fact, approximately seven miles to the south. Trooper then administered field sobriety tests. Mefford was able to recite the alphabet as instructed, but he failed the count-backward-as-instructed test and could not stand without assistance to complete the horizontal gaze nystagmus test. Trooper did not ask Mefford to perform other field sobriety tests because Mefford had already demonstrated his inability to stand, walk, and balance. Trooper arrested Mefford for driving while intoxicated.

At that point, Passenger's son arrived on the scene to pull the ATV out of the ditch. Before Passenger's son did so, Trooper examined the ATV and indicated his belief that he would be able to move the ATV. Passenger gave Trooper her permission to do so. Trooper sat in the driver's seat and realized that the ATV was "in between gears," so he placed the ATV in drive and activated the ATV's four-wheel drive. At that point, Trooper was able to drive the ATV out of the ditch and onto the roadway. Passenger then drove the ATV away from the scene, and Trooper transported Mefford to the local jail, where Mefford refused to submit to a blood-alcohol test.

The State charged Mefford with the class B felony of driving while intoxicated in violation of section 577.010[2] as a habitual offender. The case was tried to a jury. At the beginning of trial, the trial court found beyond a reasonable doubt that Mefford was a habitual offender. During its opening statement, the State described Trooper's interaction with Mefford on June 20, 2021. Among other things, the State discussed Mefford's

---

[2]All statutory references are to RSMo 2016 as supplemented through June 20, 2021, unless otherwise indicated.

3

response to being arrested: "[Mefford was] placed under arrest for driving [while] intoxicated. And he's told at that point in time, 'I'm putting you under arrest for driving while intoxicated.' [Mefford] doesn't say anything at all." Mefford did not object.

The State called Trooper as its sole witness. During Trooper's testimony, the jury watched video captured from Trooper's dash camera. In addition, the State asked Trooper:

> Q: Did [Mefford] say anything to you in response to . . . your statement that [he was] being arrested for driving while intoxicated?
>
> A: No.
>
> Q: Not like "Hey, I'm not driving." Anything like that?

The transcript does not reflect an answer by Trooper to the last question. Mefford did not object to either of the State's questions. Instead, Mefford used his cross-examination of Trooper to emphasize that Trooper failed to ask Passenger whether she had been driving the ATV, and to clarify that, while Mefford never told the Trooper that he had not been driving the ATV, Mefford asked repeatedly why he was being arrested.

Following Trooper's testimony, the State rested. Mefford then moved for a judgment of acquittal, which the trial court denied. Mefford advised the trial court that he would not be presenting evidence and moved for a judgment of acquittal at the close of all of the evidence, arguing that "no reasonable jury could find [Mefford] guilty beyond a reasonable doubt," given the absence of evidence that Mefford had been operating the ATV. The trial court denied the motion.

During closing, the State argued:

4

> I think one of the most powerful things that did not happen is that [Mefford] never once said, "I wasn't driving." He had every opportunity, when the trooper said, "Hey, you're being arrested for driving while intoxicated." "I didn't drive this vehicle," [Mefford] never said that.
>
> Think about that. You're being arrested for a crime that you know you didn't commit. You're just going to say, "Okay. Well, I guess I'll sit here and just go to jail." You're not. You're going to say, "I didn't drive."

Mefford did not object. Instead, Mefford used his closing argument to criticize Trooper for failing to ask either Mefford or Passenger who was driving the ATV, arguing that it was Trooper's responsibility to ask those questions to determine how the ATV got stuck in the ditch and the events which led to Mefford's presence in the driver's seat. In its rebuttal, the State again argued:

> And after being arrested, again [Mefford] says nothing. He says nothing about, "Wait, I wasn't the one driving. I don't understand this. I wasn't driving."
>
> He knows he's been arrested. He knows why he's been arrested. He's been told multiple times.

Mefford did not object.

The jury returned a verdict finding Mefford guilty as charged. Mefford filed a motion for judgment of acquittal or, in the alternative, motion for new trial ("Motion for New Trial"). The Motion for New Trial did not challenge the State's references to Mefford's post-arrest silence as improper.

During the sentencing hearing, the trial court denied the Motion for New Trial, and entered a judgment of conviction and sentence ("Judgment") that reflected Mefford's conviction of driving while intoxicated as a habitual offender and Mefford's sentence to eleven years' incarceration in the Missouri Department of Corrections.

Mefford appeals.

## Analysis

In his first point relied on, Mefford asserts that the trial court plainly erred in failing to declare a mistrial *sua sponte* following the State's references to Mefford's post-arrest silence during its opening statement, Trooper's testimony, and its closing argument ("Point One"). Mefford's second point relied on challenges the sufficiency of the evidence to support his conviction for driving while intoxicated in that the State failed to prove that Mefford operated the ATV while intoxicated ("Point Two"). We address the points in reverse order.

### *Point Two: Sufficiency of the Evidence*

Point Two challenges the sufficiency of the evidence to support the jury's verdict finding Mefford guilty of driving while intoxicated. "A claim that there is insufficient evidence to support a criminal conviction is always preserved for appellate review even if it is not raised as a part of a motion for new trial." *State v. Harris*, 664 S.W.3d 749, 755 (Mo. App. W.D. 2023). A challenge to the sufficiency of evidence to support a criminal conviction requires an examination of the evidence to determine whether "any rational finder of fact could have found the essential elements of the offense beyond a reasonable doubt." *State v. Pardee*, 700 S.W.3d 42, 51 (Mo. App. W.D. 2024). We do not reweigh the evidence, and instead accept as true all evidence and inferences supporting the verdict, disregarding all contrary evidence and inferences. *Id.* at 52.

"A person commits the offense of driving while intoxicated if he or she operates a vehicle while in an intoxicated condition." Section 577.010.1. To prove that a defendant

6

committed the offense of driving while intoxicated, the State has the burden to present evidence establishing two elements beyond a reasonable doubt: (1) the defendant was intoxicated; and (2) the defendant drove or operated a vehicle while in that condition. Mefford concedes that the State established that he was intoxicated at the time of his arrest. Mefford's challenge on appeal is limited to the second element, particularly whether the State established that Mefford operated the ATV while in that condition.

"Operates" is statutorily defined as "physically driving or operating a vehicle or vessel." Section 577.001(9). In *Cox v. Director of Revenue*, 98 S.W.3d 548, 550 (Mo. banc 2003), our Supreme Court recognized that the statutory definition of "operates" contemplates both "driving" and "operating," and relied on the dictionary definitions of "drive" and "operate" to ascertain the legislature's intent. The Court noted that "drive" is defined as "to guide a vehicle along or through," and "operate" is defined as "to cause to function usually by direct personal effort: work." *Id.* (quoting *Webster's Third New International Dictionary* 692, 1581 (1993)). *Cox* then set forth a bright-line rule for determining whether a person is "operating" a vehicle by "caus[ing a vehicle's] motor to function." *Id.* The Court explained:

> Once the key is in the ignition, and the engine is running, an officer may have probable cause to believe that the person sitting behind the steering wheel is operating the vehicle. This is true even if that person is sleeping or unconscious.
>
> In this case, the key was in the ignition, the engine was running, and Cox was sitting behind the steering wheel. Based on these stipulated facts, the officer had probable cause to believe that Cox was operating the vehicle.

*Id.* at 550-51 (citations omitted).

Here, the evidence at trial established that, when Trooper was approaching the top of a hill, he observed an extremely bright light. After he crested the hill, Trooper saw that the light was coming from an ATV sitting in the ditch. From his patrol car, Trooper saw Mefford sitting in the driver's seat, slumped over the steering wheel. Trooper parked his patrol car and walked toward the ATV. The ATV's motor was running. Trooper later ascertained that the ATV was in between gears. Mefford's presence in the driver's seat of an ATV with its motor running while between gears supports the reasonable inference that Mefford was operating the vehicle. "[S]itting behind the wheel with the engine running is sufficient for a jury to find the defendant operated the vehicle . . . ." *State v. Parrish*, 684 S.W.3d 752, 758 (Mo. App. E.D. 2024) (rejecting the defendant's argument that "starting [a] car using a push-to-start button start is decisively different from operating a car by turning the key in the ignition").

Mefford asserts that, while the evidence establishes that he was sitting behind the steering wheel of the ATV while its motor was running, this case presents a "slightly different" situation because "the ATV was not in gear and had been wrecked in a ditch" and Passenger was also sitting in the ATV. Mefford argues:

> Because there was no additional evidence presented by the [S]tate that [Mefford] was driving the vehicle when it was wrecked, both [Mefford] and [Passenger] jointly exercised control over the operation of the ATV. Because [Passenger] was sober, it is arguably more likely that [she] wrecked the vehicle. Couple[d] with the increasing severity of DWI laws, the facts here suggest that the sober person was driving because [Mefford] was in such a poor condition at the time of his arrest that he could barely walk, speak, or function.

8

This argument ignores that sufficient evidence supported the inference that Mefford was operating the ATV, and improvidently asks this court to reweigh the evidence. It is the role of the jury, not the appellate court, to determine the weight and credibility of the evidence presented to it. *See State v. English*, 694 S.W.3d 147, 156 (Mo. App. S.D. 2024). Moreover, "the 'State is not required to disprove every *possible* theory under which a defendant could be innocent.'" *Parrish*, 684 S.W.3d at 757 (quoting *State v. Varnell*, 316 S.W.3d 510, 518 (Mo. App. W.D. 2010)). Because Trooper's testimony established that Mefford was sitting behind the steering wheel of the ATV while its motor was running, the evidence was sufficient to establish that Mefford was operating the vehicle.

Point Two is denied.

### *Point One: References to Mefford's Post-Arrest Silence*

Mefford first point on appeal challenges the trial court's failure to declare a mistrial following the State's references to his post-arrest silence at trial, but acknowledges that his claim may only be reviewed for plain error because he did not object at trial. "Whether an unpreserved claim is statutory, constitutional, structural, or of some other origin, Rule 30.20 is the exclusive means by which an appellant can seek review of any unpreserved claim of error and said claim . . . is evaluated by [our] plain error framework without exception." *State v. Love*, 700 S.W.3d 288, 292 (Mo. App. W.D. 2024) (quoting *State v. Mills*, 687 S.W.3d 668, 675 (Mo. banc 2024)). However, "[p]lain error review is discretionary, and [an appellate court] will not review a claim for plain error unless the claimed error facially establishes substantial grounds for believing

9

that manifest injustice or miscarriage of justice has resulted." *Pardee*, 700 S.W.3d at 49

(quoting *State v. Brandolese*, 601 S.W.3d 519, 526 (Mo. banc 2020)); *see also* Rule

30.20 (providing, in pertinent part, that "plain errors effecting substantial rights may be

considered in the discretion of the court").[3]  That standard is not met here.

Mefford relies on *Doyle v. Ohio*, 426 U.S. 610 (1976), to support his claim that the

trial court committed plain error when it failed to declare a mistrial *sua sponte* after the

State addressed Mefford's post-arrest silence during its opening statement, during

Trooper's direct examination, during its closing argument, and during its rebuttal closing

argument.  Mefford argues that these references to his silence constituted affirmative

evidence of guilt and violated his Fifth Amendment right against self-incrimination.

The State, on the other hand, argues that the references to Mefford's post-arrest

silence were in the nature of impeachment, and were not improper because in *Doyle*, the

United States Supreme Court held that "the use for impeachment purposes of [a

defendant's] silence, at the time of arrest and after receiving *Miranda*[4] warnings,

violate[s] the Due Process Clause of the Fourteenth Amendment."  426 U.S. at 619.  In

this case, though Mefford had been arrested, he had not been *Mirandized*.  "*Doyle*

involve[s] situations where, for the purpose of impeachment, the prosecution use[s] a

defendant's silence after receiving *Miranda* warnings."  *State v. Graves*, 27 S.W.3d 806,

810 (Mo. App. W.D. 2000).  Missouri courts have thus consistently held that a

---

[3]All Rule references are to *Missouri Court Rules, Volume 1--State, 2023* unless otherwise indicated.
      [4]*Miranda v. Arizona*, 384 U.S. 436 (1966).

10

defendant's post-arrest silence prior to receiving *Miranda* warnings may be used by the State "when a defendant offers an explanation for his actions at trial and circumstances suggest that he would naturally have given the explanation earlier if the explanation were true." *State v. Cornelious*, 258 S.W.3d 461, 466 (Mo. App. W.D. 2008).

Both Mefford and the State agree that the United States Supreme Court has not yet addressed the propriety of use of a defendant's post-arrest, pre-*Miranda* silence as affirmative evidence of guilt. *See United States v. Wilchcombe*, 838 F.3d 1179, 1190 (11th Cir. 2016) (detailing the circuit split). This split in federal authority is not sufficiently clarified for our purposes in conducting plain error review. In *Graves*, we held that references to a defendant's post-arrest, pre-*Miranda* silence during the state's opening statement, case-in-chief, and closing argument violated the Fifth Amendment's privilege against self-incrimination "where there had been no evidence of a defense introduced by [the defendant] that could be impeached by her silence or anything else." *Id.* at 810-11. It is not plain whether Mefford's cross-examination of Trooper, and his later argument during closing, criticizing Trooper for failing to ask either Mefford or Passenger who was driving the ATV would qualify under *Graves* as "evidence of a defense introduced by [Mefford] that could be impeached by [his] silence" on the subject.

What constitutes "impeachment" for purposes of the proper admission of evidence of a defendant's post-arrest, pre-*Miranda* silence, and whether a defendant's post-arrest, pre-*Miranda* silence can be used as affirmative evidence of guilt, are serious unresolved issues that ought not be determined by plain error review. We therefore decline to

11

exercise our discretionary authority to review Mefford's first point on appeal for plain error.

Point Two is denied.

## Conclusion

The Judgment is affirmed.

_Cynthia L. Martin_
Cynthia L. Martin, Presiding Judge

All concur