STATE of Missouri, Plaintiff–
Respondent,

v.

Allen C. WESSEL, Defendant–
Appellant.

No. SD 31009.

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 6, 2011.

Matthew Ward, Columbia, MO, for Appellant.

Chris Koster, Attorney General, and, John M. Reeves, Assistant Attorney General, Jefferson City, MO, for Respondent.

DON E. BURRELL, Presiding Judge.

Allen C. Wessel ("Defendant") appeals his conviction of the class D felony of driving while intoxicated ("DWI"). *See* sections 577.010 and 577.023.3.[1] In a single point relied on, Defendant asserts that "the evidence was insufficient to establish beyond a reasonable doubt that [Defendant] 'operated' the vehicle he was in." Finding no merit in Defendant's claim, we affirm.

## Standard of Review

In reviewing the sufficiency of the evidence to support a jury's verdict, we must "consider whether a reasonable juror could find each of the elements [of the crime] beyond a reasonable doubt." *State v. Grim,* 854 S.W.2d 403, 411 (Mo. banc 1993); *see also State v. Whalen,* 49 S.W.3d 181, 184 (Mo. banc 2001). The evidence and reasonable inferences from it are viewed in the light most favorable to the jury's verdict, and "[w]e disregard contrary inferences, unless they are such a natural and logical extension of the evidence that a reasonable juror would be unable to disregard them." *Grim,* 854 S.W.2d at 411; *see also State v. Belton,* 153 S.W.3d 307, 309 (Mo. banc 2005). The following summary of the relevant facts is

---

1. All references to section 577.010 are to RSMo 2000. Unless otherwise indicated, all other statutory citations are to RSMo Cum. Supp.2010.

presented in accordance with this standard.

### Facts

In the late evening of May 7, 2009, Antonio Comacho received a call from his father that prompted him to go into the alley behind his house and look for a truck in the vicinity of Central Auto Sales in Carthage. The back of the business was "less than a football field" away from Mr. Comacho's house. From his vantage point, Mr. Comacho could see the rear of the business, including an area around a dumpster. He did not see a truck anywhere in that area. Mr. Comacho went back into his house for about 15 or 20 minutes, then came back outside and again looked toward Central Auto Sales. This time, Mr. Comacho saw a truck parked in the grass near the dumpster, and he called the police. Mr. Comacho was far enough away from the truck that he did not see anyone in it and could not hear whether its engine was running.

Police officer Chad Harris was dispatched to investigate a suspicious vehicle report and arrived at Defendant's truck "[a] few minutes after 10:00 p.m." (about five minutes after Mr. Comacho had called the police). As Officer Harris approached the truck, he "observed that the vehicle was stationary, [and] there was a large amount of steam emitting from the engine compartment. The vehicle was making a loud noise, again, coming from the engine compartment." He also described the noise as "strange." Officer Harris determined that the truck's engine was running, but "it sounded as if there were some issues with the vehicle[,]" and he agreed with defense counsel's characterization that "the truck was having mechanical problems[.]" Officer Harris did not check for exhaust. He did not check to see if it was possible to drive the truck, and he did not know if it would move under its own power.

When he got close to the truck, Officer Harris could see "a glow emitting from the dash from the instrument panel and from the radio and you could hear that the radio was on in the vehicle." Defendant was inside the truck, sitting with his seat reclined backwards. Defendant did not initially respond to knocks on the truck window by Officer Harris and another officer. It took "[s]everal minutes" before Defendant "look[ed] up temporarily to ask [them] to leave." Officer Harris observed that "[t]he passenger seat and over your [sic] extended cab portion were packed almost to the ceiling" with various items. The officers asked Defendant to step out of the truck, and "[a]s he exited the vehicle, he did take the key out of the ignition, turn it back from the forward position, and he handed the key to [Officer Harris]."

Officer Harris smelled a strong odor of alcohol coming from the inside of the truck and from Defendant's breath. Defendant "stated that he had drank [sic] two beers the night before." Defendant also told Officer Harris that he did not have a permanent residence. After Defendant failed four field sobriety tests administered by Officer Harris, Defendant was arrested for DWI and taken to the jail.

### Analysis

*Defendant "Operated" the Motor Vehicle*

█ Section 577.010.1 provides that "[a] person commits the crime of **'driving while intoxicated'** if he operates a motor vehicle while in an intoxicated or drugged condition." (Bolding as stated in original). Section 577.001.2 provides that "[a]s used in this chapter, the term **'drive'**, **'driving'**, **'operates'** or **'operating'** means physically

driving or operating a motor vehicle."[2] (Bolding as stated in original). "Thus, the two essential elements of [DWI] are: (1) operation of a vehicle; (2) while intoxicated."[3] *State v. Mitchell*, 203 S.W.3d 246, 249 (Mo.App. S.D.2006). Our high court has applied the plain and ordinary meanings of the words "drive" and "operates" in section 571.001 so that "drive" means "to guide a vehicle along or through" and "operates" means "to cause to function usually by direct personal effort: work (~a car)." *Cox v. Director of Revenue*, 98 S.W.3d 548, 550 (Mo. banc 2003) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, 692, 1581 (1993)).

Defendant argues that "[t]he evidence failed to establish that the motor of [Defendant's] truck worked and, thus, was capable of moving. [Defendant] was fast asleep behind the wheel of a motor vehicle that was apparently not operable." We disagree.

Defendant relies on *State v. Chambers*, 207 S.W.3d 194, 199 (Mo.App. S.D.2006) (holding the evidence insufficient to prove that the defendant drove or operated his motor vehicle). Chambers "was discovered slumped over the steering wheel of a car parked in [another person's] driveway." *Id.* at 195. The car's engine was not running, but the windshield wipers were moving. *Id.* We stated that "[c]ircumstantial evidence may be used to prove the elements of driving while intoxicated, however, in those cases in which the accused's engine was not running at the time in question, the State must present " 'significant additional evidence of driving and the connection of driving in an intoxicated state ... to sustain a criminal conviction.' " " *Id.* at 197 (internal citations omitted). Chambers did not admit that he had driven or operated the vehicle, and we held the possibility that barking dogs signaled his arrival in the driveway very shortly before he was discovered did "not constitute sufficient proof as to the time of the car's arrival at the [driveway] to permit an inference of [the defendant's] operation of the vehicle immediately prior to his discovery." *Id.* at 198.

Defendant acknowledges that "[t]he main difference between the cases is that in *Chambers* the engine was not running, whereas in [Defendant's] it *possibly* was." (Emphasis added.) The distinction from *Chambers* is greater than Defendant suggests. "[S]ignificant additional evidence of driving" is not required in the instant case because no one testified that the engine was *not* running. *See id.* at 197. Officer Harris testified on both direct and cross examination that he had determined that the engine *was* running. Further, Officer Harris testified that "there was a large amount of steam emitting from the engine compartment. The vehicle was making a loud noise, again, coming from the engine compartment." And Officer Harris testified that Defendant switched the ignition back from the forward position before handing Officer Harris the key.

In *State v. Wilson*, 343 S.W.3d 747 (Mo. App. E.D.2011), the defendant also argued that the evidence was insufficient to support a finding that he operated the vehicle, contending that although he was intoxicated "he was merely sleeping in his parked pickup truck" when police contacted him at 9:30 in the morning. *Id.* at 751. Yet, before "officers found [Wilson] semi-conscious in the parked truck[,]" one witness observed the truck arrive in front of her house about 30 minutes before the police

---

**2.** This definition was renumbered from subsection 1 to subsection 2 in 2005.

**3.** Defendant does not contest the sufficiency of the evidence to prove that Defendant was in "an intoxicated or drugged condition."

arrived, no one got out of the truck during the "several minutes" that the witness watched, the truck was running when officers approached it, and Wilson was behind the wheel. *Id.* "This evidence was, in itself, sufficient to prove that [Wilson] had operated the truck." *Id.*

Here, Defendant argues that "[e]ven if the engine was running, the evidence was insufficient to prove that [he] was in a position capable of affecting its movements." Again, we disagree. From the evidence presented, the jury could reasonably conclude that Defendant was positioned as necessary to operate the vehicle. Defendant admits in his brief that the officer found him behind the wheel. And because the passenger seat and "extended cab portion" of the truck "were packed almost to the ceiling" with other things, behind the wheel was the only location inside the truck where Defendant could have been before Officer Harris approached it.

Defendant argues that "[a]s far as anyone knows, the truck could not move by its own machinery" and his truck "remained stationary at Custom Auto Sales for the two to three days before [Defendant's] arrest." This assertion relies on an inference the jury could reasonably have drawn if it credited certain testimony.[4] But the argument ignores other testimony that supported a contrary inference, and the jury was free to believe some, all, or none

of each witness's testimony. *State v. Williams*, 277 S.W.3d 848, 853 (Mo.App. E.D.2009).

When Mr. Comacho first looked at the area behind Custom Auto Sales, it was empty. He saw Defendant's truck there when he looked again some 15 to 20 minutes later. The jury could reasonably infer from the testimony of Mr. Comacho and Officer Harris that Defendant "operated" his truck during the time period between Mr. Comacho's two observations of the area by the dumpster. While it is *possible* that someone towed Defendant's truck to that area shortly before Mr. Comacho saw it there, the jury did not have to believe that that is what occurred. It could reasonably infer from the evidence that Defendant operated the vehicle to get it there, especially in light of Officer Harris's testimony that the engine of Defendant's truck was running when he approached it.

 Sufficient evidence supported the jury's determination that Defendant "operated" the motor vehicle. Defendant's point is denied, and the judgment of the trial court is affirmed.

RAHMEYER and LYNCH, JJ., Concur.

---

4. This testimony came from a former neighbor of Defendant, Shanna Garcia, who testified that she let Defendant park his truck in her backyard for about a year, and she did not see Defendant drive the truck during that time period. Ms. Garcia was not asked whether she knew how the truck left her property, and she testified that she did not know the mechanical condition of the truck on the critical date of May 7, 2009. Juan Lopez, an employee of Central Auto Sales, testified that he told Defendant he could park his truck behind the business for two or three days. Mr. Lopez did not see how the truck arrived at the area behind the dumpster. James Hendricks, the brother of Defendant's girlfriend, testified that Defendant had lived with his sister "[o]ff and on" for a period of time and was living with her at the time of Defendant's arrest. Mr. Hendricks testified that he was unable to start the truck on May 8, 2009 (the day after Defendant was arrested), and towed it away with his own truck. Mr. Hendricks could not provide any information about whether the engine was running the day before he towed the truck.