

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | |
|---|---|
| STATE OF MISSOURI, | ) |
| | ) |
| Respondent, | ) |
| | ) WD76818 |
| v. | ) |
| | ) OPINION FILED: |
| | ) September 2, 2014 |
| MARVIN D. BESENDORFER, | ) |
| | ) |
| Appellant. | ) |

**Appeal from the Circuit Court of Bates County, Missouri
The Honorable James K. Journey, Judge**

**Before Division I:** Mark D. Pfeiffer, Presiding Judge, and
Lisa White Hardwick and Karen King Mitchell, Judges

Marvin D. Besendorfer ("Besendorfer") appeals his conviction for driving while intoxicated ("DWI") following a bench trial in the Circuit Court of Bates County, Missouri ("trial court").[1] Besendorfer challenges the sufficiency of the evidence to support his conviction. We affirm.

---

[1] Besendorfer's first direct appeal was dismissed by this court because the trial court sentenced him without expressly allowing him to waive his right to file a post-trial motion for new trial. *State v. Besendorfer*, 372 S.W.3d 914 (Mo. App. W.D. 2012). Upon remand, Besendorfer expressly waived his right to file a motion for new trial, and the trial court resentenced him to a four-year sentence, suspending execution of the sentence and placing Besendorfer on probation for five years.

**Factual and Procedural Background**[2]

The State charged Besendorfer by information with one count of class B felony DWI as a chronic offender. The parties appeared for trial on May 24, 2011, and announced an agreement under which the State would reduce the DWI charge to a class D felony and Besendorfer would waive his right to a jury trial. After accepting both the agreement and the jury-trial waiver, the trial court conducted a bench trial. The arresting officer and the officer who interviewed Besendorfer at the jail testified for the State; Besendorfer and his girlfriend testified for the defense. The evidence presented at trial, viewed in the light most favorable to the judgment and ignoring all contrary evidence and inferences, *State v. Burns*, 359 S.W.3d 558, 560 (Mo. App. W.D. 2012), showed the following:

On the evening of December 1, 2006, in freezing temperatures and snowy conditions, a Missouri State Highway Patrol trooper was patrolling Missouri Highway 18 when he observed a black pick-up truck partially off the roadway in a ditch in a five-foot-deep snow bank. Tracks on the road showed that the truck had been traveling south on a gravel road, turned west onto Highway 18, and then slid across the road into the ditch. As the trooper passed the vehicle, he noticed that the interior lights were on and there was vapor coming from the exhaust. The trooper returned to the vehicle, exited his patrol car and could hear the engine running as he approached the vehicle on foot. In fact, Besendorfer would later admit that he may have been the one to have started the engine and turned the interior lights on and he knew that he was the one that had "turned the heat up" in the truck. The truck's radio was also on. The trooper observed that there were no tracks showing footprints originating from the vehicle or the roadside. When the trooper looked inside, he saw Besendorfer lying on his right side on the

---

[2] We view the evidence in the light most favorable to the judgment. *State v. Burns*, 359 S.W.3d 558, 560 (Mo. App. W.D. 2012).

bench seat, asleep, with his feet near the brake and gas pedals. The trooper made contact with Besendorfer and ultimately asked him to step out of the vehicle and to accompany the trooper back to the trooper's patrol car. Besendorfer turned off the ignition to the car[3] and exited his vehicle.

Besendorfer was clearly intoxicated. He admitted to drinking at least a twelve-pack of beer at a friend's house; his speech was slurred; he swayed as he walked to the patrol car; the smell of alcohol was on his breath; his eyes were glassy and bloodshot; and he failed numerous field sobriety tests. In fact, Besendorfer admitted at trial that he was intoxicated at all relevant times involving the operation of his vehicle that night. As Besendorfer admits in his appellate briefing:

> [Besendorfer] admitted drinking at least a 12-pack of beer that night, and that he was intoxicated. If he drove the truck to where it got stuck, he did so while intoxicated.

App. Reply Br. 13. Besendorfer claims, however, that he had *not* driven the truck, instead claiming in his appellate briefing:

> There was only evidence that [Besendorfer] was *in* the truck, sleeping, and that the engine was running. That is not evidence that he drove [the truck] there. . . . [T]he State did not prove beyond a reasonable doubt that Mr. Besendorfer drove—or operated—the vehicle while intoxicated.

App. Reply Br. 13 (emphasis in Besendorfer's Reply Brief). Besendorfer, along with his girlfriend, testified that Besendorfer had not driven the truck that evening. Instead, it was Besendorfer's girlfriend who had dropped Besendorfer off at his friend's house to consume large amounts of alcohol between 6:00 p.m. and 9:30 p.m., then picked Besendorfer up in the truck after Besendorfer's evening of binge drinking, and then drove the truck in such a way to cause it

---

[3] While Besendorfer's act of turning off the ignition is not "operating," as that act causes a vehicle *not* to function, *Cox v. Dir. of Revenue*, 98 S.W.3d 548, 551 (Mo. banc 2003), there is sufficient additional evidence that Besendorfer "operated" a motor vehicle.

to leave the roadway. After doing so, Besendorfer claims that because he had "a bad leg," he sent his girlfriend out in the snow and freezing temperatures to walk three to five miles to their house to retrieve another vehicle and to come back and pick him up. This, in the face of Besendorfer's testimony that the reason he did not call anyone else to come pick up he and his girlfriend after the wreck was because he did not want anyone out on the dangerous road conditions.

Needless to say, the trial court did not find the testimony of Besendorfer or his girlfriend credible,[4] denied Besendorfer's motions for judgment of acquittal at the close of the State's evidence and at the close of all the evidence, and found Besendorfer guilty of DWI. Besendorfer timely appeals, challenging the sufficiency of the evidence to support his conviction.

## Standard of Review[5]

Our review of the sufficiency of the evidence for a criminal conviction in a court-tried case is determined by the same standard as in a jury-tried case: whether or not there was sufficient evidence from which the trier of fact could have reasonably found guilt. *State v. Sladek*, 835 S.W.2d 308, 310 (Mo. banc 1992). "In determining whether or not there is evidence sufficient to support a finding of guilt, an appellate court may not weigh the evidence but accepts as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and all contrary evidence and inferences are ignored." *Id.*

---

[4] "We defer to the fact-finder's superior position to weigh and value the evidence, determine the witnesses' credibility and resolve any inconsistencies in their testimony." *State v. Long*, 417 S.W.3d 849, 851 (Mo. App. S.D. 2014) (internal quotation omitted).

[5] Besendorfer asserts that the proper standard of review in this criminal case should be the standard of review for bench-tried civil cases, *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), in order to protect his rights under the Fourteenth Amendment. He urges this court to apply the "weight of the evidence" standard of review. Besendorfer is correct that the *Murphy* standard of review has been cited in a few appeals involving bench-tried criminal cases. *See State v. Gooden*, 962 S.W.2d 443, 445 (Mo. App. W.D. 1998). However, "[t]hese principles of civil appellate review do not apply in a criminal case. *See City of Kansas City v. McGary*, 218 S.W.3d 449, 451 n.1 (Mo. App. W.D. 2006). An appellate court does not engage in a weight-of-the-evidence review in a criminal case. *See State v. Miller*, 499 S.W.2d 496, 499 (Mo. 1973)." *State v. Cole*, 384 S.W.3d 318, 321 (Mo. App. S.D. 2012) (footnote omitted) (citations omitted).

4

**Analysis**

In his sole point on appeal, Besendorfer asserts that:

The trial court erred in overruling Mr. Besendorfer's motion for judgment of acquittal at the close of all the evidence, and in entering judgment on the verdict of guilty of driving while intoxicated, because the rulings violated Mr. Besendorfer's right to due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Missouri Constitution, in that the evidence was insufficient to establish beyond a reasonable doubt that Mr. Besendorfer drove or operated the truck while intoxicated, because he merely slept in a vehicle with the engine running, and while he may have manipulated the heater and even started the engine, there was no evidence that he caused the truck to function *as a vehicle*, that is, as more than a place to stay warm while waiting for another ride.

Besendorfer acknowledges that there was no dispute that he was intoxicated when the trooper made contact with him. But he argues that the State failed to prove that he was *operating* the truck when it was stuck in the snow with the engine running. Besendorfer admits that he slept in the truck with the engine running and may have started the engine and manipulated the heater but claims that the evidence did not show that he caused the truck to function as a vehicle. Besendorfer appears to argue that there was no evidence that he placed the truck in motion. However, operation of a motor vehicle does not require motion.

"A person commits the crime of 'driving while intoxicated' if he operates a motor vehicle while in an intoxicated or drugged condition." § 577.010.1.[6] The offense requires proof of two elements: (1) the defendant operated a motor vehicle, and (2) was intoxicated while doing so. *State v. Davis*, 217 S.W.3d 358, 360 (Mo. App. W.D. 2007). The first element is defined in section 577.001.2 as "physically driving or operating a motor vehicle." The Missouri Supreme Court has adopted the dictionary definition of "operate": "'to cause to function usually by direct personal effort: work (~ a car).'" *Cox v. Dir. of Revenue*, 98 S.W.3d 548, 550 (Mo. banc 2003)

---

[6] All statutory references are to the Revised Statutes of Missouri 2000, as updated through the 2005 Cumulative Supplement.

5

(quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1581 (1993)). Section 577.001 permits "operating a motor vehicle" to be established by circumstantial evidence. *State v. Chambers*, 207 S.W.3d 194, 197 (Mo. App. S.D. 2006); *Baptist v. Lohman*, 971 S.W.2d 366, 368 (Mo. App. E.D. 1998).

In *Cox*, the Supreme Court evaluated the following fact pattern:

On Saturday, August 15, 1998, at 10:20 p.m., a police officer discovered Cox sleeping or unconscious, sitting in the driver's seat behind the wheel of a vehicle, in the parking lot of a gas station. Cox was the only person in or around the vehicle. The keys were in the ignition, and the motor was running. Seeing the shift lever in "park," the officer knocked on the window.

Awaking, Cox lowered the window. He had a strong odor of an intoxicating beverage on his breath. His eyes were very bloodshot and watery, and he appeared disoriented. The officer noticed a glass of brown liquid between his legs. At the officer's request, Cox turned off the ignition, exited the vehicle, and tried but failed sobriety tests. The officer arrested him for driving while intoxicated.

*Cox*, 98 S.W.3d at 549. On those facts, in a driver's license revocation civil proceeding, the court concluded that the officer had probable cause to believe that Cox was "operating" the vehicle. *Id.* at 550-51.

While Besendorfer correctly asserts that "probable cause" in a civil proceeding does not equate with a finding of guilt beyond a reasonable doubt in a criminal proceeding, it cannot be ignored that the facts of *Cox*—which are extremely similar to the facts of the present case—are relevant to any fact finder's determination—whether civil or criminal—on the issue of what evidence may support a finding of "operation" of a motor vehicle.

In *State v. Wilson*, 343 S.W.3d 747, 751 (Mo. App. E.D. 2011), a criminal sufficiency of the evidence DWI case, the defendant argued that the evidence was insufficient to support a finding that he operated the vehicle, contending that, although he was intoxicated, "he was merely sleeping in his parked pickup truck" when police found him at 9:30 in the morning. Yet,

6

before "officers found [Wilson] semi-conscious in the parked truck," one witness observed the truck arrive in front of her house about thirty minutes before the police arrived and the witness did not see anyone get out of the truck during the "several minutes" that she observed the truck. *Id.* And later, when the officers approached the truck, the engine was still running and Wilson was behind the wheel. *Id.* Given this direct testimonial evidence and circumstantial evidence, the court found that "[t]his evidence was, in itself, sufficient to prove that [Wilson] had operated the truck." *Id.*

Similarly, in *State v. Wessel*, 371 S.W.3d 1, 2 (Mo. App. S.D. 2011), an officer was dispatched to investigate a suspicious vehicle that had reportedly been parked for about twenty minutes. As the officer approached Wessel's truck, he observed that the vehicle was stationary but the engine was running and making a loud noise. *Id.* The officer could see illumination from the instrument panel and heard the radio. *Id.* Wessel was sitting in the driver's seat, with the seat reclined backwards. *Id.* The officers knocked on the truck windows to rouse Wessel. *Id.* When he was exiting the truck, Wessel switched the ignition back from the forward position before handing the key to the officer. *Id.* The Southern District concluded that sufficient evidence supported the jury's determination that Wessel "operated" the motor vehicle. *Id.* at 4.[7]

Here, Besendorfer admits he was the only person in the truck when the trooper found him asleep and intoxicated in the truck; he admits that the incident wherein the truck slid off the road happened the same evening the trooper found him asleep in the truck and not long after he claims to have sent his girlfriend off into the extreme cold and snow to walk three to five miles away to retrieve another vehicle to pick him up (even though he claims to have feared calling anyone else

---

[7] *See also State v. Mitchell*, 77 S.W.3d 637, 640 (Mo. App. W.D. 2002) (defendant found asleep in his truck on shoulder with engine running but not moving forward because defendant's foot was on brake pedal constitutes sufficient evidence that defendant was "operating" the vehicle); *State v. Wiles*, 26 S.W.3d 436, 441 (Mo. App. S.D. 2000) (defendant found asleep in car with engine running, car in park, and headlights and tail lights on, falls within broad definition of "operating" a vehicle).

to pick the two of them up because he did not want anyone driving in the dangerous conditions); he admits that the engine was running, the radio was on when the trooper found him, and he may have started the engine; he admits that he manipulated the temperature to the heater in the truck; and he admits that his feet were positioned near the gas and brake pedals as he was sleeping in the cab of the truck. Even though Besendorfer and his girlfriend claimed that Besendorfer's girlfriend had been the driver of the truck leading to the wreck, the trooper observed no footprints coming from the truck or on the roadside that would have corroborated a person walking away from the truck after it slid off the roadway and into the ditch.

We conclude that the State presented sufficient direct and circumstantial evidence for a reasonable trier of fact to find beyond a reasonable doubt that Besendorfer had "operated" his vehicle while in an intoxicated condition. Accordingly, the trial court did not err in overruling Besendorfer's motion for judgment of acquittal and in finding him guilty of "operating" a motor vehicle while intoxicated in violation of section 577.010.

Point denied.

### Conclusion

The judgment of the trial court is affirmed.

Mark D. Pfeiffer, Presiding Judge

Lisa White Hardwick and Karen King Mitchell, Judges, concur.