In the Missouri Court of Appeals
 Eastern District
 DIVISION TWO

 ) No. ED108862
 )
IN THE INTEREST OF: D.E.W. ) Appeal from the Circuit Court
 ) of St. Charles County
 )
 )
 ) Honorable Rebeca Navarro-McKelvey
 )
 ) Filed: February 9, 2021

 Introduction

 D.E.W. (Appellant) appeals the judgment of the Family Court finding him guilty of three

counts of stealing, contending there was insufficient evidence to establish his guilt beyond a

reasonable doubt. Appellant also appeals the Family Court’s Adjudication Order finding him

guilty under paragraph 5(g) of Respondent Juvenile Officer’s (Respondent) petition because

Appellant was charged with committing the offense of minor in possession of alcohol but found

guilty of stealing.

 We affirm the convictions and remand the judgment to the Family Court for the sole

purpose of correcting the clerical error contained in the Adjudication Order.

 Factual and Procedural Background

 Viewed in the light most favorable to the verdict, the evidence at trial showed the

following:

 1
 On the evening of April 27, 2019, three boys – Appellant, S.W., and L.M. – were hanging

out when they decided to take a walk. They began at S.W.’s house in O’Fallon, Missouri and, led

by Appellant, walked into the Cherrywood Parc subdivision in O’Fallon. Appellant then asked

S.W. and L.M., “Do you guys want to go break into cars?” S.W. stated he did not think it was a

good idea, to which Appellant replied, “Come on, bro, it won’t be that bad, and nothing will

happen.” S.W. again stated he did not think they should break into cars. Appellant then replied,

“Oh, come on, p----, you should do it.”

 Ultimately, S.W. agreed to break into cars with Appellant and L.M. They first pulled on

the door handle to see if the vehicle was left unlocked. If unlocked, they would enter the car and

look for items to steal. Throughout the night the juveniles broke into 5 to 15 vehicles and stole

items including but not limited to phone chargers, gift cards, change, a wallet containing credit

cards, and a gun. Appellant, S.W., and L.M. either remained as a group of three or would break

into a group of two with one individual on his own but close by. S.W.’s and L.M.’s actions were

caught on camera by at least one residence.

 Overnight and into the morning of April 28, 2019, the police began receiving calls from

car owners in the Cherrywood Parc subdivision that their vehicles had been broken into and

items had been stolen. City of O’Fallon Police Officer Jonathan Eversmeyer (Officer

Eversmeyer) was dispatched to meet with one victim, David Gardiner (Gardiner). Gardiner’s

wallet and black Ruger LC9 firearm were stolen from his truck. Gardiner also reported several

fraudulent purchases with PlayStation Network had been attempted on his credit card.

 Detective Dean Frye (Det. Frye) began working on the case shortly thereafter and was

notified of a YouTube video depicting two suspects entering a car in the Cherrywood Parc

subdivision. Based on the video footage, Det. Frye determined the suspects were probably

 2
juveniles. During his investigation, Det. Frye received a text message identifying S.W. as a

subject. Det. Frye later discovered S.W. had used Kenneth Bass’s (Bass) credit card at Walmart

because S.W. listed his personal information while making the purchase with Bass’s credit card.

Det. Frye also recovered two credit cards that had been cut in half and two identification cards at

S.W.’s house. S.W.’s mother indicated Appellant and L.M. were likely involved.

 On August 1, 2019, Det. Frye met with Appellant and his grandmother to confirm his

suspicions. Det. Frye believed Appellant showed signs of deception with regard to many of his

questions; nonetheless, Appellant did admit to stealing with S.W. and L.M. on April 27, 2019.

 Several months later, on September 20, 2019, Appellant attempted to steal two bottles of

alcohol and a BB gun from Walmart. After concealing the bottles of alcohol in his bookbag,

Appellant pulled open a locked display case and took out a BB gun. Appellant stuffed the BB

gun down his pants and made his way to the store’s exit in the garden center. When he exited the

store, Walmart’s security guards apprehended him on the sidewalk.

 Eight charges were brought against Appellant in Family Court. The first five charges

relate to the events from April 27, 2019. Paragraph 5(a) charged Appellant with stealing six

credit cards from Gardiner’s vehicle. Paragraph 5(b) charged Appellant with stealing a black

Ruger LC9 handgun from Gardiner’s vehicle. Paragraph 5(c) charged Appellant with stealing a

pair of Coach prescription sunglasses from Sarah Kline’s (Kline) vehicle. Paragraph 5(d)

charged Appellant with stealing a phone charger and gift cards from Dzenana Kozlicic’s

(Kozlicic) vehicle. Paragraph 5(e) charged Appellant with stealing a credit card, wallet, license,

and social security card from Bass’s vehicle. The sixth and seventh charges relate to the events

from September 20, 2019. The sixth charge, paragraph 5(f), charged Appellant with stealing two

bottles of vodka and a BB gun from Walmart. The seventh charge, paragraph 5(g), was brought

 3
pursuant to section 311.325, and charged Appellant with committing the offense of minor in

possession of alcohol. The eighth charge, paragraph 5(h), was brought against Appellant

pursuant to section 569.160 for committing a burglary on October 19, 2019.

 Appellant was tried by the Family Court on January 13, 2020. At trial, Respondent first

called Appellant’s co-conspirator S.W. to testify. S.W. largely confirmed the facts stated above.

Specifically, he pointed to a map and identified Cherrywood Parc subdivision as the area where

they had stolen from cars on the evening of April 27, 2019. S.W. further stated it was

Appellant’s idea to steal from the vehicles and Appellant had pressured him into agreeing. S.W.

also testified Appellant had stolen a firearm and wallet from a dark-colored, four-door truck.

S.W. stated he told Appellant he could not bring the gun back to his house, so Appellant threw

the gun in a bush.

 Officer Eversmeyer testified to his initial role in the case in the early hours of April 28,

2019, when he obtained a statement from Gardiner and completed a report. Det. Frye also

testified at trial as to his investigation of the events and his discussions with Appellant, S.W., and

L.M.

 Respondent then called four victims to testify, including Gardiner, Bass, Kline, and

Kozlicic. Bass resided in the Cherrywood Parc subdivision on Sassafras Parc Court. Bass

testified he had left his vehicle unlocked on the night of April 27, 2019. The next morning, Bass

discovered his vehicle had been broken into and his wallet had been stolen. His wallet contained

a credit card, his license, and his social security card. Bass’s credit card company alerted him

about an attempted fraudulent purchase. He then reported the theft to the police. His wallet was

ultimately found discarded in his neighbor’s truck bed, but the credit card was still missing. Bass

testified he had not given anyone permission to enter his vehicle and take his belongings.

 4
 Kline testified that on the evening of April 27, 2019, she was spending the night at her

mother’s house located on Sassafras Parc Drive in the Cherrywood Parc subdivision. Kline

admitted to leaving her car unlocked that night. The next morning, she noticed the contents of

her glove compartment had been thrown all over her car’s seats. She contacted the police. She

testified her Coach prescription sunglasses had been stolen, among other items. Kline had not

given anyone permission to enter her vehicle and take her belongings.

 Kozlicic testified she resided on Cherrywood Parc Drive in the Cherrywood Parc

subdivision. She stated that on the night of April 27, 2019, she noticed her usually quiet dog was

“barking insanely.” Her car was parked in her driveway. The next morning, her husband asked

her why she had left her center console open. Kozlicic then realized her phone charger and a

couple of Chick-fil-A gift cards were missing. The door to her husband’s car was also left

partially open. Kozlicic contacted the police to file a report. She also stated she had not given

anyone permission to enter her car and remove items.

 With respect to the incident at Walmart, Jeff Noyes (Noyes) testified he worked as an

asset protection associate at Walmart on September 20, 2019. Noyes stated he began watching

Appellant via closed-circuit television (CCTV) when he saw Appellant enter the liquor aisle

because he looked underage. He testified to seeing Appellant take two bottles of liquor, move to

another aisle, and then put both bottles in his bookbag. Still following Appellant via CCTV,

Noyes witnessed Appellant pull open a locked display, take a BB gun, and conceal it in his pants.

Noyes testified he and another asset protection associate tracked Appellant to the exit of the store

and apprehended him on the sidewalk. Noyes stated he contacted the police after recovering the

stolen items from Appellant. The CCTV video was also entered into evidence and played for the

court.

 5
 Appellant was found guilty of all the charges except for paragraph 5(b), the stealing

charge related to Gardiner’s handgun. Notably, the handwritten Adjudication Order stated, “The

court finds the juvenile guilty of stealing class D misdemeanor as charged in paragraphs D, F,

and G of the Juvenile Officer’s Petition. The court finds the juvenile not guilty of the Class D

felony charged in paragraph B of the Juvenile Officer’s Petition.”

 This appeal followed.

 Points Relied On

 Appellant has raised four claims of error on appeal. Points I, II, and III assert there was

insufficient evidence for the Family Court to find Appellant guilty of the crimes charged in

paragraphs 5(c), 5(d), and 5(e). Point IV claims the court plainly erred in finding Appellant

guilty of committing misdemeanor stealing under paragraph 5(g) as Appellant was originally

charged with the offense of minor in possession of alcohol.

 Points I, II, and III

 Standard of Review

 Juvenile proceedings are reviewed in the same manner as other court-tried cases. C.G.M.,

II v. Juvenile Officer, 258 S.W.3d 879, 882 (Mo. App. W.D. 2008). “[I]n juvenile proceedings,

‘due process requires the standard of proof to be beyond a reasonable doubt in the adjudicatory

stage when a juvenile is charged with an act that would constitute a crime if committed by an

adult.’” Id., quoting In the Interest of J.L.P., 600 S.W.2d 47, 50 (Mo. App. E.D. 1980).

 On appeal, we must affirm the lower court’s judgment unless it is not supported by

substantial evidence, it is against the weight of evidence, or it erroneously declares or applies the

law. J.N.C.B. v. Juvenile Officer, 403 S.W.3d 120, 124 (Mo. App. W.D. 2013). In reviewing a

challenge to the sufficiency of the evidence, this Court determines whether there was

 6
sufficient evidence from which a reasonable juror could have found the defendant guilty beyond

a reasonable doubt. State v. Langdon, 110 S.W.3d 807, 811 (Mo. banc 2003). This standard

remains the same whether the case is tried by a jury or the court. State v. Besendorfer, 439

S.W.3d 831, 834 (Mo. App. W.D. 2014), citing State v. Sladek, 835 S.W.2d 308, 310 (Mo. banc

1992). “In determining the sufficiency of the evidence, we ‘view the evidence and reasonable

inferences which may be drawn therefrom in the light most favorable to the verdict and we

ignore all evidence and inferences to the contrary.’” J.N.C.B., 403 S.W.3d at 124, quoting C.L.B.

v. Juvenile Officer, 22 S.W.3d 233, 236 (Mo. App. W.D. 2000). “This is not an assessment of

whether the Court believes that the evidence at trial established guilt beyond a reasonable doubt

but rather a question of whether, in light of the evidence most favorable to the State, any rational

fact-finder could have found the essential elements of the crime beyond a reasonable doubt.”

Williams v. State, 386 S.W.3d 750, 754 (Mo. banc 2012) (internal quotation marks omitted).

However, we will not supply missing evidence or give the state the benefit of unreasonable,

speculative, or forced inferences. J.N.C.B., 403 S.W.3d at 124.

 Discussion

 Appellant claims Respondent failed to present sufficient evidence to prove Appellant

stole Kline’s sunglasses (Point I),1 Kozlicic’s phone charger and Chick-fil-A cards (Point II), and

Bass’s wallet and the items therein (Point III). In support of his arguments, Appellant emphasizes

the fact that neither he nor S.W. nor L.M. admitted to stealing or mentioned the stolen items in

question. However, viewing the evidence in the light most favorable to the verdict, we hold there

1
 Appellant has challenged the credibility of Kline’s testimony regarding her glasses being stolen because Kline
previously stated her laptop was also stolen by Appellant but later discovered she had simply misplaced it. However,
we defer to the fact-finder’s “superior position to weigh and value the evidence, determine the witnesses’ credibility
and resolve any inconsistencies in their testimony.” State v. Paschall, 606 S.W.3d 653, 655 (Mo. App. S.D. 2020)
(internal quotation marks omitted). Here, the Family Court examined Kline’s credibility and determined her
testimony to be credible.

 7
was sufficient evidence from which a reasonable juror could have found Appellant stole the

items from the victims.

 Section 570.0302 defines stealing as the following:

 1. A person commits the offense of stealing if he or she:
 (1) Appropriates property or services of another with the purpose to deprive
 him or her thereof, either without his or her consent or by means of deceit
 or coercion;

 ...
 [or]

 (3) For the purpose of depriving the owner of a lawful interest therein,
 receives, retains or disposes of property of another knowing that it has been
 stolen, or believing that it has been stolen.

 Additionally, Appellant is culpable for the actions of S.W. and L.M. during the

commission of their offenses. Specifically, section 562.041.1 provides:

 A person is criminally responsible for the conduct of another when:
 (1) The statute defining the offense makes him or her so responsible; or
 (2) Either before or during the commission of an offense with the purpose
 of promoting the commission of an offense, he or she aids or agrees to aid
 or attempts to aid such other person in planning, committing or attempting
 to commit the offense.

S.W.’s testimony provides evidence that Appellant both aided and caused S.W. and L.M. to

participate in the string of thefts. Appellant suggested they break into cars with him. When S.W.

did not initially agree, Appellant replied, “Oh, come on, p----, you should do it.” See State v.

Barnum, 14 S.W.3d 587, 591 (Mo. banc 2000) (“The broad concept of ‘aiding and abetting’

plainly encompasses acts that could be construed as ‘encouragement’ or its derivation.”). “Mere

encouragement is enough.” Id. Moreover, the actions of Appellant, S.W., and L.M. during the

thefts and S.W.’s testimony confirm they worked together to find and steal from unlocked cars.

See, e.g., State v. Zetina-Torres, 482 S.W.3d 801, 809 (Mo. banc 2016) (“The doctrine of

2
 All statutory references are to RSMo (2016) unless otherwise indicated.

 8
accomplice liability embodied in section 562.041.1(2) ‘comprehends any of a potentially wide

variety of actions intended by an individual to assist another in criminal conduct.’”).

 The evidence, viewed in the light most favorable to the verdict, established Appellant

committed the thefts in a specific timeframe, place, and manner consistent with the victims’

vehicles. S.W. testified at trial he, Appellant, and L.M. committed the crimes on the evening of

April 27, 2019. All three victims testified their vehicles were broken into on the night of April

27, 2019, which they noticed on the morning of April 28, 2019. The victims also confirmed the

items in question were in their vehicles on April 27, 2019, and they did not give the juveniles or

anyone else permission to take their belongings. Furthermore, when presented with a map at

trial, S.W. pointed to Cherrywood Parc subdivision as the area they stole within and agreed the

subdivision included streets such as Cherrywood Parc Drive and Sassafras Parc Drive.

Correspondingly, the victims reported their cars were broken into on Cherrywood Parc Drive

(Kozlicic), Sassafras Parc Court (Bass) and Sassafras Parc Drive (Kline), all within the

Cherrywood Parc subdivision identified by S.W. Finally, S.W. testified they had a specific

manner in which they would target vehicles to steal from: only approaching vehicles that were

parked out front and left unlocked. Correspondingly, two of the victims testified their vehicles

were unlocked on the evening of April 27, 2019, and the third victim did not remember if her

vehicle was locked or not.

 Additionally, S.W. testified to stealing from numerous cars in the neighborhood on the

evening of April 27, 2019. Furthermore, Det. Frye’s testimony established that S.W. used Bass’s

credit card to make a purchase at Walmart. Det. Frye was able to uncover S.W.’s address, email,

and phone number through the purchase. In his closing argument, Appellant admitted S.W. was

“[a]lso tied to another victim, Mr. Bass, through the purchase that was made on Mr. Bass’s credit

 9
card: his name, his address, his -- his email address, as well.” As discussed above, because

Appellant was culpable for S.W.’s actions, S.W.’s possession and use of Bass’s credit card only

further establish Appellant, S.W., and L.M. stole from Bass.

 Although significant evidence exists to find Appellant guilty of stealing under Points I, II,

and III, Appellant claims the evidence presented was insufficient because it did not conclusively

prove Appellant ever actually possessed the items in question. Appellant points to the record,

which contains no specific evidence or statements that Appellant, S.W., or L.M. broke into the

victims’ vehicles and took the items in question. However, we considered a similar challenge in

State v. Bowen, 523 S.W.3d 483 (Mo. App. E.D. 2017). In Bowen, we stated:

 Appellant does not cite to any case law that supports his argument that the State
 was required to prove that Appellant stole each individual item listed on the verdict
 director, and we have found no case law that supports his position. Instead, in
 reviewing whether the jury could have convicted Appellant of stealing, we need
 only determine whether any rational trier of fact could have found the essential
 elements of the crime beyond a reasonable doubt. Id. After reviewing the evidence
 in the light most favorable to the verdict, we conclude that there was sufficient
 evidence presented on each of the essential elements necessary to convict Appellant
 of stealing.

Id. at 487. As in Bowen, given that Appellant, S.W., and L.M. committed the crimes in a specific

timeframe, place, and manner consistent with the victims’ circumstances, worked together as a

group, and admitted to committing additional thefts, a rational trier of fact could have found the

essential elements of stealing beyond a reasonable doubt. Id.

 To the extent that the evidence relied upon is circumstantial, “[c]ircumstantial and direct

evidence are afforded the same weight. So long as the evidence meets the minimal appellate

standard for due process, we need not disturb the verdicts simply because they depended wholly

upon circumstantial proof.” State v. Capraro, 291 S.W.3d 364, 366 (Mo. App. S.D. 2009)

(internal quotation marks omitted).

 10
 In conclusion, the evidence presented by Respondent was sufficient to find Appellant

guilty of the stealing offenses in Points I, II, and III. Accordingly, Points I, II, and III are denied.

 Point IV

 Discussion

 Paragraph 5(g) charged Appellant with committing the offense of minor in possession of

alcohol. However, in the court’s handwritten Adjudication Order dated January 13, 2020, the

order states “[t]he Court finds the juvenile guilty of stealing class D misdemeanor as charged in

paragraphs D, F, and G of the Juvenile Officer’s Petition.”

 As both parties agree, finding Appellant guilty of stealing under paragraph 5(g) was

erroneous because 5(g) charged Appellant with a different crime. Both parties also agree an

individual cannot be convicted of an offense for which he was not specifically charged.

However, in response to Appellant’s challenge, Respondent argues the Adjudication Order’s

listing of paragraph 5(g) as a stealing offense was merely a clerical error that may be corrected

by the Family Court nunc pro tunc.

 Nunc pro tunc is a common law power which allows a court that no longer has

jurisdiction over a case to maintain jurisdiction over its records so the court may correct clerical

mistakes in the judgment arising from either scrivener’s errors or from omissions that are

indicated in the record. McGuire v. Kenoma, LLC, 447 S.W.3d 659, 663 (Mo. banc 2014). For a

nunc pro tunc order to be appropriate, the clerical error must be discernible from the record.

Pirtle v. Cook, 956 S.W.2d 235, 243 (Mo. banc 1997). “Nunc pro tunc cannot be used to add

anything to the judgment that is not in some way already reflected in the record, even if a judge

should have included or intended to include the omission or has a laudatory motive in wanting to

 11
amend the judgment.” DiSalvo Properties, LLC v. Purvis, 498 S.W.3d 530, 534 (Mo. App. E.D.

2016).

 Thus, to determine whether a nunc pro tunc order is proper in this case, it must be

determined whether correcting the Adjudication Order changes the original judgment or merely

changes the record. Bureaus Inv. Grp. v. Williams, 310 S.W.3d 297, 301 (Mo. App. E.D. 2010).

For example, in State v. Fizer, 119 S.W.3d 640, 641 (Mo. App. W.D. 2003), the trial court

sentenced the defendant to one year of imprisonment for possession of drug paraphernalia.

However, the written judgment sentenced the defendant to ten years’ imprisonment for the

possession charge. Id. Noting the record at the sentencing hearing, the Western District stated the

ten-year sentence “is clearly a clerical mistake in recording the sentence imposed on the

appellant.” Id. Thus, the Western District affirmed the defendant’s conviction but remanded the

judgment to the trial court for the “sole purpose of entering a nunc pro tunc order to correct the

written judgment so as to reflect the one year sentence imposed by the trial court for [the

defendant’s] conviction for possession of drug paraphernalia.” Id.

 Similarly, here the record establishes that listing paragraph 5(g) as a stealing offense was

a clerical error. The Adjudication Order and the trial record make it apparent the charge in

paragraph 5(b) was the only count Appellant on which was found not guilty. This demonstrates

the court’s intention and belief that Appellant was guilty of the charge of minor in possession of

alcohol, which was plainly listed in the Fourth Amended Petition filed just three days before the

Adjudication Order. On February 24, 2020, the court stated, “I believe there was a trial -- and he

was found guilty on all counts but one. There was one that he was found not guilty on.”

Moreover, the court separately found Appellant guilty of stealing the vodka as charged in

paragraph 5(f). This demonstrates that the inclusion of paragraph 5(g) as a stealing offense was a

 12
mere clerical error, as the court would not have found him guilty of the same offense twice.

Having been found guilty of stealing the vodka, this necessarily implies the court found he also

possessed the vodka.

 An order nunc pro tunc is clearly supported by the record through the various files and

statements. Miller v. Varity Corp., 922 S.W.2d 821, 824 (Mo. App. E.D. 1996). Therefore, we

affirm the conviction but remand the judgment to the Family Court for the sole purpose of

entering a nunc pro tunc order to correct the Adjudication Order to reflect Appellant’s guilt

under paragraph 5(g) of possessing alcohol as a minor.

 Conclusion

 For the reasons discussed above, we affirm Appellant’s convictions. The judgment is

remanded to the Family Court for the sole purpose of correcting the clerical error contained in

the Adjudication Order.

 _________________________________
 SHERRI B. SULLIVAN, J.

Robin Ransom, P.J., and
Lisa P. Page, J., concur.

 13