

# In the
# Missouri Court of Appeals
# Western District

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | WD84851 |
| | ) | |
| v. | ) | OPINION FILED: |
| | ) | February 7, 2023 |
| DAVID SCOTT NOWICKI, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Saline County, Missouri**
The Honorable Hugh Craig Harvey, Judge

Before Special Division: Gary D. Witt, Chief Judge, Presiding, Cynthia L. Martin, Judge, and Timothy J. Flook, Special Judge

David Scott Nowicki ("Nowicki") appeals from the trial court's judgment convicting him of driving while intoxicated as a chronic offender, failure to drive on the right half of the roadway, and operating a motor vehicle without maintaining financial responsibility. Nowicki argues on appeal that there was insufficient evidence admitted to prove beyond a reasonable doubt that his sentence for driving while intoxicated was subject to enhancement because he was a chronic offender. Because the evidence was insufficient to permit a reasonable inference that each of Nowicki's four prior convictions were qualifying

intoxication-related traffic offenses, the trial court's judgment of conviction and sentence is affirmed in part and reversed in part. The case is remanded with instructions.

**Factual and Procedural Background**

The State charged Nowicki with one count of driving while intoxicated as a chronic offender in violation of section 577.010, one count of failure to drive on the right half of the roadway in violation of section 304.015, and one count of operating a motor vehicle without maintaining financial responsibility in violation of section 303.025.[1] Viewed in the light most favorable to the finding of guilt,[2] the evidence at trial established the following:

On March 21, 2019, at approximately 2:40 a.m., Sergeant Cody Dunfee ("Sergeant Dunfee") of the Missouri State Highway Patrol ("MSHP") saw a vehicle partially off the roadway and in a ditch just off of Interstate 70 in Saline County. Sergeant Dunfee stopped to help, and saw Nowicki asleep or passed out behind the wheel. Sergeant Dunfee knocked on the car window. Nowicki woke up but could not explain to Sergeant Dunfee what happened. Sergeant Dunfee contacted MSHP Trooper, Holly Stevens[3] ("Trooper Stevens"), for assistance. Once Trooper Stevens arrived on the scene, she and Sergeant Dunfee assisted Nowicki out of the vehicle because he was having difficulty walking. Neither Trooper Stevens nor Sergeant Dunfee noticed an odor of marijuana or alcohol.

---

[1]All statutory references are to RSMo 2016 as supplemented through March 21, 2019, unless otherwise indicated.

[2] When reviewing the sufficiency of the evidence, we do not reweigh the evidence. *State v. Shaw*, 592 S.W.3d 354, 357 (Mo. banc 2019). Instead, we accept as true all evidence tending to prove guilt and all reasonable inferences that support the verdict, disregarding all contrary evidence and inferences. *Id.*

[3]At the time of trial Trooper Stevens no longer worked for MSHP as a trooper and had changed her surname to Wallace. We have elected to refer to Trooper Stevens as she was known on the date of Nowicki's arrest.

Trooper Stevens administered several field sobriety tests, after which she concluded that Nowicki was impaired and arrested him. Trooper Stevens then transported Nowicki to a local hospital for treatment, but after Trooper Stevens advised Nowicki of his rights, he refused to submit to a chemical test of his blood. Trooper Stevens drove Nowicki to the Saline County Jail at approximately 5 a.m. During his initial booking interview, Nowicki admitted that he had been driving the vehicle, but advised Trooper Stevens that he had not been drinking and had not used any legal or illegal drugs within the last seventy-two hours. Trooper Stevens then contacted MSHP Sergeant Adam Dillon ("Sergeant Dillon"), a drug recognition expert, and relayed what she had observed from field sobriety tests and her observation of Nowicki. Sergeant Dillon concluded that Nowicki was under the influence of a narcotic analgesic.

A jury trial was scheduled for June 22, 2021. Before the trial began, Nowicki pleaded guilty to failure to drive on the right half of the roadway and to operating a motor vehicle without maintaining financial responsibility, leaving only the charge of driving while intoxicated for the jury to determine. Before the jury was selected, and pursuant to section 577.023.2, the trial court was required to determine whether Nowicki was subject to an enhanced sentence if the jury found him guilty of driving while intoxicated. The State admitted five exhibits to establish that Nowicki had four prior convictions in 1986, 1990, 1994, and 2005. The State contended that each of the prior offenses qualified as an intoxication-related traffic offense ("IRTO"). Because the definition of "chronic offender" in section 577.001(5) includes a person with four prior IRTOs, the State argued that Nowicki was a chronic offender. After considering the evidence, the trial court concluded

3

that the State proved beyond a reasonable doubt that Nowicki was a chronic offender as that term is defined in section 577.001(5). The trial proceeded, and the jury found Nowicki guilty of driving while intoxicated. The trial court entered a judgment ("Judgment") reflecting Nowicki's convictions on all charges, and sentencing Nowicki to five years' incarceration for driving while intoxicated as a chronic offender, 10 days' incarceration for failure to drive on the right half of the roadway, and a $100 fine for operating a motor vehicle without maintaining financial responsibility.

Nowicki appeals. Nowicki challenges the sentence imposed for the crime of driving while intoxicated. Nowicki argues that there was insufficient evidence to establish beyond a reasonable doubt that he was a chronic offender. Nowicki asks that his case be remanded for resentencing.

## Standard of Review

Nowicki did not challenge the trial court's finding that he was a chronic offender in his motion for new trial. Nowicki and the State disagree about whether he was required to do so in order to preserve the issue for appellate review.

Nowicki argues that the trial court's finding that Nowicki was a chronic offender because he had four prior IRTOs is subject to a sufficiency-of-the-evidence challenge, and that sufficiency-of-the-evidence challenges need not be raised in a motion for new trial to be preserved for appellate review. The State disagrees, asserting that sufficiency-of-the-evidence challenges apply only to proof of an essential element of a crime, and not to proof of IRTOs relied on to enhance a sentence. The State thus argues that unless alleged error

4

regarding a finding about IRTOs is included in a motion for new trial, it is unpreserved and may only be afforded plain error review pursuant to Rule 30.20.

Though no case has squarely addressed the State's contention, we are nonetheless guided by *State v. Craig*, 287 S.W.3d 676 (Mo. banc 2009), where our Supreme Court considered a challenge to the trial court's finding that a defendant's sentence for driving while intoxicated was subject to enhancement because the defendant was an aggravated offender. In *Craig*, the defendant pleaded guilty to driving while intoxicated, but challenged the trial court's finding that he had pleaded guilty to, or had been found guilty of, three prior IRTOs and was an aggravated offender. *Id.* at 677. The Court observed that, under section 577.023,[4] the state has the burden to prove prior IRTOs beyond a reasonable doubt before a defendant can be subject to enhanced punishment as an aggravated offender. *Id.* at 681. The Court treated the challenge to the trial court's finding that the defendant was an aggravated offender as a sufficiency-of-the-evidence challenge, and noted that "[i]n determining whether there is sufficient evidence to support the conviction, this court accepts as true all evidence tending to prove guilt together with all reasonable inferences that support the finding." *Id.* (quoting *State v. McKinney*, 253 S.W.3d 110, 113 (Mo. App. W.D. 2008); *see also State v. Shepherd*, 643 S.W.3d 346 (Mo. banc 2022) (reviewing defendant's Colorado driving record to determine whether the evidence was sufficient to prove the defendant's prior IRTOs beyond a reasonable doubt).

---

[4]Section 577.023.7(2), RSMo Supp. 2005, was the applicable subsection and version of the statute in *Craig*. The statute has since been amended several times, but the state's burden to establish prior IRTOs beyond a reasonable doubt remains. *See* section 577.023.1(2).

5

The State's contention that the proof required to establish IRTOs beyond a reasonable doubt is not subject to a sufficiency-of-the-evidence challenge is without merit.

A sufficiency-of-the-evidence challenge need not be included in a motion for a new trial to preserve the claim for appeal. *See* Rule 29.11(d) (in a jury-tried case, a sufficiency-of-the-evidence challenge does not have to be included in a motion for new trial to be preserved for appeal). Moreover, Nowicki's status as a chronic offender was determined by the trial court pursuant to section 577.023.2 before Nowicki's guilt of the charge of driving while intoxicated was determined by the jury. Pursuant to Rule 29.11(e), motions for new trial are not necessary to preserve an issue for appeal with respect to bench-tried matters.

Whether we are reviewing a jury-tried case or a court-tried case, our review of a claim challenging the sufficiency of the evidence is the same. *State v. Anderson*, 653 S.W.3d 677, 682 (Mo. App. W.D. 2022). Our task is to "determine whether sufficient evidence permits a reasonable [fact-finder] to find guilt beyond a reasonable doubt," accepting as true all evidence tending to prove guilt and all reasonable inferences that support the finding. *Id.* (quoting *State v. Cannafax*, 344 S.W.3d 279, 284 (Mo. App. S.D. 2011)). Applied to determining whether a defendant committed IRTOs, we accept as true all evidence tending to prove that a defendant has prior convictions that arose from conduct that meets the definition of an IRTO, and all reasonable inferences that support the finding. *See Shepherd*, 643 SW.3d at 351, 353.

6

**Analysis**

Nowicki challenges the trial court's finding that he is a chronic offender, as defined by section 577.001(5),[5] and thus challenges the enhancement of his sentence for the offense of driving while intoxicated.

Driving while intoxicated is ordinarily a class B misdemeanor, but a person who has four IRTOs committed on separate occasions is classified as a chronic offender, elevating the offense to a class C felony. Section 577.010.2(1); section 577.001(5)(a); section 577.010.2(5)(a). An IRTO is statutorily defined as:

> driving while intoxicated, driving with excessive blood alcohol content, driving under the influence of alcohol or drugs in violation of a state law, county or municipal ordinance, any federal offense, or any military offense, or an offense in which the defendant was operating a vehicle while intoxicated and another person was injured or killed in violation of any state law, county or municipal ordinance, any federal offense, or any military offense . . . .

Section 577.001(15). This definition thus creates four categories of qualifying IRTOs:

> (1) driving while intoxicated; (2) driving with excessive blood alcohol content; (3) driving under the influence of alcohol or drugs in violation of a county or municipal ordinance; and (4) operating a vehicle while intoxicated and another person was injured or killed in violation of any state law, county or municipal ordinance, any federal offense, or any military offenses.

*Shepherd*, 643 SW.3d at 349 (footnotes omitted). The state bears the burden to prove beyond a reasonable doubt each IRTO on which it relies to enhance the present offense of driving while intoxicated. Section 577.023.1(2); *see also Craig*, 287 S.W.3d at 681.

---

[5]Section 577.001 defines graduated levels of offenders, including prior, persistent, aggravated, chronic and habitual, differentiated by the number of IRTOs committed.

7

Nowicki concedes that his 2005 conviction meets the definition of an IRTO.[6] However, he claims that there was insufficient evidence to prove beyond a reasonable doubt that his 1986, 1990, and 1994 convictions were IRTOs because the State failed to prove that Nowicki was "driving" in connection with those offenses as the term was defined at the time of his present offense. Nowicki argues that the Supreme Court's decision in *State v. Shepherd*, 643 S.W.3d 346 (Mo. banc 2022), requires us to vacate the sentence imposed on his charge of driving while intoxicated, and to remand his case for resentencing. We agree.

In *State v. Shepherd*, the Court considered the state's evidentiary burden to prove that a defendant's prior out-of-state convictions constituted IRTOs in order to enhance the offense of driving while intoxicated. 643 S.W.3d at 349. Before addressing whether the evidence admitted by the state was sufficient to establish IRTOs, the Court resolved two issues of general application to every case where the state has the burden to prove beyond a reasonable doubt that a defendant has been convicted of an IRTO.

First, the Court concluded that the enhancement provision set forth in section 577.010.2, and the definition of IRTO found in section 577.001(15), "speak only at the time of the enhancement, i.e., at the time of [the] present offense." *Id.* As such, the Court held that:

> a prior conviction qualifies as an IRTO only if the conduct involved constituted "driving while intoxicated" (or another portion of the IRTO definition in section 577.001(15)) ***as defined at the time of the current***

[6]Nowicki does not concede that the 2005 conviction, standing alone, would support enhancement of his sentence for the present offense of driving while intoxicated.

8

*offense for which the state seeks enhancement*, not the time of the conduct underlying the prior conviction.

*Id.* (emphasis added).

Second, the Court addressed "what is meant by 'driving' in the IRTO statute." *Id.* at 350. The Court observed that "at the time of [the defendant's] present offense, the word 'driving' mean[t] 'physically driving or operating a vehicle or vessel.'" *Id.* (citing section 577.001(9)). The Court concluded that the definition of driving at the time of the defendant's present offense did not include "merely being in 'actual physical control' of a vehicle." *Id.* (citing *Cox v. Dir. of Revenue*, 98 S.W.3d 548, 550 (Mo. banc 2003)).[7]

> As a result, a prior offense that [is] based solely on the defendant being in physical control of a vehicle while intoxicated cannot qualify as an IRTO under the definition in effect at the time of [the] present offense because it did not involve "driving" as that word was defined at the time of [the] present offense.

*Id.*

Once it reached these conclusions, the Court turned its attention to determining whether the state's evidence--a certified copy of the defendant's Colorado driving record showing four prior convictions for "driving while under the influence of alcohol and/or drugs," and three prior convictions for "driving while ability was impaired by alcohol and/or drugs"--was sufficient to establish qualifying IRTOs beyond a reasonable doubt because they were committed when the defendant was "driving" as defined at the time of the present offense. *Id.* at 348, 352. The Colorado statutes the defendant had previously violated criminalized both "driving" a vehicle and merely being in "actual physical control"

---

[7]In 1996, the General Assembly removed the phrase "being in actual physical control" from the definition of "driving" in section 577.001.0, RSMo Supp. 1996.

of a vehicle. *Id.* at 350. "As a result, every one of [the defendant's] seven prior Colorado convictions, whether for 'driving' under the influence or while impaired, could have been for ***driving*** a vehicle in either condition or for being in actual physical ***control*** of a vehicle in either condition." *Id.* at 351.

> In circumstances such as these (i.e., when the defendant was convicted in another state under a statute prohibiting both conduct that does meet the applicable definition of an IRTO in Missouri and conduct that does not), this Court holds that it is the state's burden to prove beyond a reasonable doubt, not merely that this out-of-state conviction occurred but also that the conviction arose from conduct that meets the definition of an IRTO under Missouri law at the time of the present offense.

*Id.* (citation omitted).

The Court concluded that with three exceptions,[8] the defendant's Colorado driving record did not establish the nature of the conduct underlying the defendant's prior convictions. *Id.* at 352. The Court rejected the state's suggestion that mere evidence of the convictions themselves constituted sufficient evidence from which the trial court could reasonably infer that the convictions were for conduct that meets the definition of "driving" at the time of the offense for which enhancement was sought. *Id.* The Court explained:

> When the evidence is utterly silent about the existence or non-existence of some fact, and the finder of fact draws from such silence a conclusion about that fact, this is mere supposition or speculation. It is not an inference, and certainly not a reasonable inference.
>
> To be clear, the flaw in the state's case is not that the evidence gave rise to two equally likely inferences as to whether the conduct underlying the four Colorado convictions qualify as IRTOs under Missouri law at the time of the

---

[8]The driving record admitted into evidence by the state showed that three of the prior convictions involved accidents. *Shepherd*, 643 S.W.3d at 352 n.11. The Court in *Shepherd* concluded that "the fact the record shows an accident was involved breaks the silence as to whether the conviction was for driving or merely being in actual physical control and allows the circuit court to infer that the underlying conduct was the former." *Id.*; *see also id.* at 353.

10

present offense. Had that been the case, the circuit court could draw whichever inference it was persuaded to draw. Instead, the problem is that the evidence in this case gave rise to *no* inference, and certainly no reasonable inference, on that issue with respect to four of the Colorado convictions.

*Id.* at 353 (citation omitted). Because the record was "utterly silent" with respect to any evidence from which it could be inferred that Shepherd's conduct at the time of four of his prior offenses constituted "driving" as defined at the time of the offense for which enhancement was sought, the Supreme Court concluded that the State had not sustained its burden to establish that those four offenses were qualifying IRTOs. *Id.*

In light of *Shepherd*, Nowicki's present offense of driving while intoxicated, which was committed in 2019, can only be enhanced by IRTOs as defined at the time of his present offense. As in *Shepherd*, the definition of "driving" at the time of Nowicki's present offense meant "physically driving or operating a vehicle" and did not include "merely being in 'actual physical control' of a vehicle." Section 577.001(9); *see* 643 S.W.3d at 351. Thus, as in *Shepherd*, key to determining whether the State sustained its burden of proof to establish a sufficient number of IRTOs to render Nowicki a chronic offender is examining whether Nowicki's convictions in 1986, 1990, 1994, and 2005 could have been committed by merely being in actual physical control of a vehicle, and if so, whether the admitted evidence permitted a *reasonable* inference that the prior offenses were committed while Nowicki was physically driving or operating a vehicle. *See* 643 S.W.3d at 350.

In so concluding, we reject the State's contention that the reach of *Shepherd* is limited to situations where the state relies on evidence of out-of-state convictions to establish qualifying IRTOs. The Supreme Court's conclusions that a prior conviction must

11

qualify as an IRTO as that term is defined at the time of the present offense, and that the definition of "driving" at the time of the present offense controls in determining whether a prior offense is a qualifying IRTO, were general pronouncements involving the construction of Missouri statutes. These holdings were not influenced by the source of evidence to establish IRTOs, and cannot be fairly read as applicable only when prior offenses were committed out-of-state. *Shepherd*, 643 S.W.3d at 349-51. Though the Court concluded that records for four of seven out-of-state convictions were not sufficient to support a conclusion that the offenses were committed by physically driving or operating a vehicle, the rationale for this holding was not based on whether the offenses were committed out-of-state. Instead, the rationale for this conclusion was based on a fundamental principle of general application that a record which is "utterly silent" about the existence or non-existence of some fact does not permit a fact-finder to draw a reasonable inference about that fact. *Id.* at 353. As such, *Shepherd* is highly relevant to our disposition of Nowicki's claim on appeal.

The State admitted five exhibits into evidence in an effort to prove that Nowicki was a chronic offender because he had been convicted of IRTOs in 1986, 1990, 1994, and 2005. Section 577.023.4 provides that "[e]vidence offered as proof of the defendant's status as a . . . chronic offender . . . shall include but not be limited to evidence of findings of guilt received by a search of the records of the Missouri uniform law enforcement system . . . or the certified driving record maintained by the Missouri department of revenue." State's Exhibit 1 (in part) and Exhibit 5 are Missouri uniform law enforcement system

12

("MULES")[9] records that were admissible pursuant to section 577.023.4. The remainder of State's Exhibit 1 is a memorandum from the Cooper County Circuit Clerk, and State's Exhibits 2, 3, and 4 are court records from Nowicki's 1990, 1994, and 2005. Though not admitted pursuant to the express authority of section 573.023.4, these additional Exhibits into evidence is not challenged on appeal. Thus, we must determine whether the trial court had sufficient evidence before it to find that Nowicki's prior convictions involved "driving while intoxicated," or "driving with excessive blood alcohol content," or "driving under the influence in violation of a county or municipal ordinance," the first three of the four categories of conduct that qualified as IRTOs at the time of Nowicki's present offense. Section 577.001(15).[10]

Nowicki concedes that State's Exhibit 4, accumulated records involving his 2005 conviction of driving while intoxicated as a B misdemeanor in violation of section 577.010, RSMo 2000, was sufficient to establish a qualifying IRTO because at the time of that offense, the statutory definition of "driving" had already been changed so that Nowicki could not have been convicted unless he had been physically driving or operating a vehicle. Nowicki challenges, however, the sufficiency of the evidence to establish that his convictions in 1986, 1990, and 1994 were qualifying IRTOs. Nowicki contends that these offenses could have been committed by merely being in actual physical control of a vehicle,

---

[9]MULES is "a statewide-computerized communications system provided by the [Missouri state highway patrol] designed to provide services, information, and capabilities to the law enforcement and criminal justice community in the state of Missouri." Section 43.010(2).

[10]None of Shepherd's prior convictions involved the injuring or killing of another person, rendering that category of the definition of an IRTO irrelevant. Section 577.001(15).

13

and that no other evidence in the record permits a reasonable inference that he committed the offenses while physically driving or operating a vehicle. We agree.

State's Exhibit 1 was offered to establish Nowicki's 1986 conviction of a "local BAC offense." The Exhibit includes MULES records admissible pursuant to section 577.023.4, and a memorandum from the Cooper County Circuit Clerk stating that court records from the 1986 conviction had been purged pursuant to a local rule. Exhibit 1 indicates that Nowicki was arrested on February 20, 1986, by the Boonville Police Department for a "local BAC offense," and was convicted of the charged offense on May 19, 1986, in municipal court. The essential elements of the "local BAC offense" are not identified in the record, and the county or municipal ordinance Nowicki apparently violated has not been identified or admitted into evidence. As a result, Exhibit 1 does not support an inference that Nowicki's conduct involved "driving" as that term was defined at the time of his present offense, and is not sufficient to sustain the State's burden to establish that the offense was a qualifying IRTO. *Shepherd*, 643 S.W.3d at 353.

The State argues that Exhibit 1 has to be considered alongside State's Exhibit 5, which indicates that Nowicki was convicted of a "stop sign" offense in Boonville on the same day he was convicted of the "local BAC offense." The State contends that the circumstances surrounding Nowicki's 1986 conviction for a "local BAC offense" are identical to the three out-of-state convictions in *Shepherd* that were found to be qualifying IRTOs because the conviction records reflected that the defendant was driving under the influence or while impaired resulting in an accident, permitting the reasonable inference that the offenses were committed while the defendant was physically driving or operating

14

a vehicle. 643 S.W.3d at 352 n.11, 353. The State thus argues that the record is not "utterly silent" on the subject of Nowicki's conduct at the time of the 1986 "local BAC offense," because the "stop sign" conviction constitutes circumstantial evidence permitting the inference that Nowicki was "physically driving or operating a vehicle" when he committed the "local BAC offense."

Circumstantial evidence is evidence of conditions or facts that do not directly prove the principal fact, but instead give rise to a logical inference that the principal fact exists as claimed. *State v. Howery*, 427 S.W.3d 236, 245 (Mo. App. E.D. 2014). Circumstantial evidence that gives rise to a logical inference about the principal fact to be proved possesses the same probative value as direct evidence of the principal fact. *State v. Grim*, 854 S.W.2d 403, 407 (Mo. banc 1993).

Here, the principal fact the State was required to prove beyond a reasonable doubt is that Nowicki was physically driving or operating a vehicle when he committed the "local BAC offense" in 1986. The record contains no direct evidence of this principal fact. The State argues that Nowicki's conviction of a "stop sign" offense on the same day he was convicted of the "local BAC offense" is circumstantial evidence that is independently probative of this principal fact.

We disagree. The "stop sign" conviction is only probative of Nowicki's conduct when the "local BAC offense" was committed if an additional principal fact is proven--that the "stop sign" offense and the "local BAC offense" were committed at the same time. As to this additional principal fact, there is no direct or circumstantial evidence in the record. This case is thus distinguishable from *Shepherd* where prior offenses were found to be

15

qualifying IRTOs because the record established that the offenses resulted in accidents, permitting a reasonable inference that defendant's conduct involved "physical driving or operating" a vehicle since the offenses and accidents occurred at the same time. Here, in sharp contrast, the record "is utterly silent about the existence or non-existence of some fact," that is, whether the "stop sign" offense and the "local BAC offense" occurred at the same time. *See Shepherd*, 643 S.W.3d at 353. For a finder of fact to draw from such silence a conclusion about this essential principal fact would not be a reasonable inference, and would instead be mere supposition or speculation. *Id.* Though State's Exhibit 1 and Exhibit 5 establish that Nowicki resolved a stop sign offense on the same court date that he resolved the "local BAC offense," the State's hypothesized inference that the offenses were therefore committed on the same day and at the same time is attenuated conjecture that is too remote and uncertain to permit a reasonable fact-finder to conclude, beyond a reasonable doubt, that Nowicki was "physically driving or operating" a vehicle when he committed the "local BAC offense."[11] We acknowledge that our standard of review is deferential, but no court is free to "supply missing evidence or give the state the benefit of

---

[11]In *State v. Ring*, 141 S.W.2d 57, 64, 65 (Mo. banc 1940), our Supreme Court held the principle "[t]hat several inferences may be drawn from the same proved facts, if each is supported by the proved facts and not dependent for establishment of one fact upon inference to be drawn from some other fact shown only by inference, is too well established to require citation of authorities." This principle has since been relied on in intermediate appellate cases to conclude that "[a]n inference may not properly arise which is 'dependent for establishment of one fact upon inference to be drawn from some other fact shown only by inference." *State v. Woodworth*, 941 S.W.2d 679, 689 (Mo. App. W.D. 1997) (quoting *State v. Moss*, 622 S.W.2d 292, 296 (Mo. App. E.D. 1981)); *see also State v. Putney*, 473 S.W.3d 210, 220 (Mo. App. E.D. 2015).

*Ring* has never been abrogated. However, some intermediate appellate cases have called into question whether "inference stacking" is, in fact, *per se* prohibited. *See, e.g.*, *State v. Kinsella*, 578 S.W.3d 802, 815-16 (Mo. App. E.D. 2019); *State v. Ryan*, 576 S.W.3d 326, 333-34 (Mo. App. S.D. 2019). We not need address whether there is a technical "rule" that *per se* prohibit inference stacking, as even the authorities criticizing the existence of any such "rule" agree with its underpinning. Reasonable inferences cannot be drawn from insufficient evidence, and evidence is insufficient if it is so attenuated and remote as to require speculation and conjecture to supply missing facts. *Kinsella*, 576 S.W.3d at 815-16; *Ryan*, 576 S.W.3d at 333-34.

16

unreasonable, speculative or forced inferences." *State v. Langdon*, 110 S.W.3d 807, 811-12 (Mo. banc 2003) (citing *State v. Whalen*, 49 S.W.3d 181, 184 (Mo. banc 2001)).

Because the evidence was insufficient to establish or to permit a reasonable inference that Nowicki was physically driving or operating a vehicle at the time of the 1986 "local BAC offense," it was error for the trial court to conclude that the 1986 offense was a qualifying IRTO.

State's Exhibit 2 is the docket sheet associated with Nowicki's 1990 guilty plea to "excessive blood alcohol" in violation of section 577.012, RSMo 1986, in Cooper County. State's Exhibit 2, together with State's Exhibits 1 and 5, indicate that Nowicki was arrested by the Missouri State Highway Patrol for "Dwi-Alcohol" on July 22, 1990, and pleaded guilty to "excessive blood alcohol" on September 12, 1990. In July 1990, section 577.012, RSMo 1986, provided that a person is guilty of driving with excessive blood alcohol content if "he operates a motor vehicle . . . with ten-hundredths of one percent or more by weight of alcohol in his blood." At the time, "operates" was defined as "physically driving or operating or being in actual physical control of a motor vehicle." Section 577.001.1, RSMo 1986. Thus, Nowicki could have been convicted in 1990 of violating section 577.012 based on conduct that would not qualify as "driving" at the time of his present offence. There is no information in State's Exhibits 1, 2, or 5 permitting a reasonable inference that Nowicki's 1990 conviction involved physically driving or operating a vehicle as opposed to merely being in actual physical control of a vehicle. *See Shepherd*, 643 S.W.3d at 353. As such, there was not sufficient evidence in the record to support the trial court's conclusion that Nowicki's 1990 conviction was a qualifying IRTO.

17

State's Exhibit 3 is the docket sheet associated with Nowicki's 1994 guilty plea in Cooper County to "Dwi-Alcohol" in violation of section 577.010, RSMo 1994. The docket sheet and State's Exhibit 1 combine to establish that Nowicki was arrested for the offense on June 12, 1994, by the Boonville Police Department, and then pleaded guilty to the offense in Cooper County on October 12, 1994. At the time of his arrest, section 577.010, RSMo 1994, criminalized driving while intoxicated, which was defined as "operat[ing] a motor vehicle while in an intoxicated or drugged condition." Section 577.010, RSMo 1994. The definition of "operating" had not changed since Nowicki's 1990 conviction. As a result, Nowicki's 1994 conviction could have been committed by conduct that did not involve physically driving or operating a vehicle, and that instead involved merely being in actual physical control of a vehicle. There is no indication in Exhibits 1 or 3 permitting a reasonable inference that Nowicki's 1994 conviction involved physically driving or operating a vehicle as opposed to merely being in actual physical control of a vehicle. *See Shepherd*, 643 S.W.3d at 353.

As it did in connection with Nowicki's 1986 "local BAC offense," the State argues that Exhibit 5 establishes that Nowicki was convicted of a "stop sign" offense on the same day he pleaded guilty to the 1994 driving while intoxicated offense. However, State's Exhibit 3 (the docket sheet for the 1994 driving while intoxicated offense) does not refer to a concurrent "stop sign" charge or conviction. And State's Exhibit 5 does not identify when the "stop sign" offense was committed. For the reasons explained in addressing the same argument raised in connection with the 1986 "local BAC offense," we reject the State's assertion that trial court could have reasonably inferred that Nowicki committed the

18

stop sign offense and the driving while intoxicated offense at the same time. Because the evidence was insufficient to establish or to permit a reasonable inference that Nowicki was physically driving or operating a vehicle at the time of the 1994 driving while intoxicated offense, it was error for the trial court to conclude that the 1994 offense was a qualifying IRTO.

Despite *Shepherd*'s controlling guidance, the State argues that our decision in *State v. Ellmaker*, 611 S.W.3d 320 (Mo. App. W.D. 2020), decided two years before *Shepherd*, requires us to conclude that the admission of conviction records pursuant to the express authority of section 577.023.4 constitutes *prima facie* evidence of qualifying IRTOs, shifting the burden to Nowicki to prove that the conduct giving rise to his prior offenses did not qualify as "driving" as defined at the time of the present offense. The State argues that because part of Exhibit 1 and Exhibit 5 were MULES records admitted pursuant to the authority of section 577.023.4, and because those Exhibits show convictions for alcohol related traffic offenses in 1986, 1990, and 1994, the State made a *prima facie* case that those convictions were qualifying IRTOs.

Section 577.023.4, as explained *supra*, provides, in part, that "[e]vidence **offered as proof** of the defendant's status as a prior offender, . . . persistent offender, . . . aggravated offender, . . . chronic offender, . . . [or] habitual offender . . . shall include but not be limited to evidence of findings of guilt received by a search of the records of the Missouri uniform law enforcement system . . . ." (Emphasis added.) As the State argues, in *Ellmaker*, we held that, because the General Assembly specifically identified MULES records as a source of proof of a defendant's status as a chronic offender, the mere admission of those records

19

into evidence constitutes *prima facie* proof of qualifying IRTOs. *Id.* at 327-29. Nowicki argues that *Ellmaker* and similar cases were overruled *sub silentio* by *Shepherd*, and that the mere admission of MULES records does not satisfy the State's burden to submit *facts* into evidence from which a reasonable inference can be drawn that a prior offense was committed by physically driving or operating a vehicle, and not merely by being in actual control of the vehicle.

Because *Shepherd* involved out-of-state conviction records, section 577.023.4 was not directly implicated in the case. However, *Shepherd's* unambiguous holding that mere evidence of a prior offense is not sufficient to permit a reasonable inference that the offense was committed by conduct that qualifies as "driving" as defined at the time of present offense applies evenly to all cases where the state bears the burden to establish qualifying IRTOs beyond a reasonable doubt. If the prior offense could have been committed by conduct that does not qualify as "driving" as defined at the time of the offense for which enhancement is sought, then facts beyond mere commission of the prior offense must be in evidence to permit a reasonable inference that the prior offense involved conduct that qualifies as an IRTO. *Shepherd*, 643 S.W.3d at 353.

Though section 577.023.4 provides that "[e]vidence offered as proof" of a defendant's prior offenses "shall include" MULES records, the statute merely assures the admissibility of MULES (and other specified) records as evidence to establish a prior offense. The statute does not address whether the "[e]vidence offered as proof" of a prior offense is sufficient to sustain the state's burden to establish that the offense constitutes a qualifying IRTO. Thus, if a prior offense established by records admitted pursuant to

20

section 577.023.4 could have been committed by conduct that does not constitute "driving" as defined at the time of the offense for which enhancement is sought, then other factual information must appear in the evidence to support a reasonable inference that the offense is a qualifying IRTO. To the extent *Ellmaker*, or other similar cases,[12] hold or suggest otherwise, they are necessarily abrogated by *Shepherd*.[13] This conclusion is not altered by the fact that Department of Revenue ("DOR") records, which described the offense of which the defendant was convicted as "DRIVING WHILE INTOXICATED," led *Ellmaker* to conclude that "driving" means "driving." 611 S.W.3d at 326. Whether a charged offense is described in an admitted record by abbreviation, such as "DWI," or by spelling out the word "driving," the bare designation of the charged offense is not evidence of the existence or non-existence of a fact supporting a reasonable inference about the conduct of the driver at the time of the offense. *See Shepherd*, 643 S.W.3d at 348, 353 (finding insufficient evidence to prove that the defendant was convicted of IRTOs where an out-of-state driving record outlined four prior convictions for "***driving*** while under the influence of alcohol and/or drugs" and three prior convictions for "***driving*** while ability was impaired by alcohol and/or drugs") (emphasis added).

Nowicki's point on appeal is granted. There was insufficient evidence presented to sustain the State's burden to prove beyond a reasonable doubt that Nowicki's 1986, 1990,

---

[12]See, for example, *State v. Rattles*, 450 S.W.3d 470, 474 (Mo. App. S.D. 2014), and *State v. Miller*, 153 S.W.3d 333, 338 (Mo. App. S.D. 2005), both of which were cited with approval in *Ellmaker*. 611 S.W.3d at 327-28.

[13]*Shepherd* expressly abrogated intermediate appellate court cases that had held that the conduct underlying a prior out-of-state conviction, in addition to meeting the applicable definition of an IRTO, must also constitute a crime under Missouri law in effect at the time of the offense for which enhancement is sought. 643 S.W.3d at 351-52 n.10.

and 1994 convictions were IRTOs. The trial court's conclusion that Nowicki is a chronic offender is not supported by the evidence. As a result, the sentence imposed for Nowicki's conviction of driving while intoxicated as a chronic offender is legally erroneous.

As Nowicki concedes, the evidence was sufficient to establish that Nowicki's 2005 conviction for driving while intoxicated constituted an IRTO as defined by section 577.001(15). Section 577.001(20) defines a "prior offender" as a person who has been found guilty of one IRTO, but only where "such prior offense occurred within five years of the occurrence of the [IRTO] for which the person is charged." Because the only IRTO that the State proved beyond a reasonable doubt occurred more than five years before the occurrence of Nowicki's present offense on March 21, 2019, Nowicki's present offense of driving while intoxicated is a class B misdemeanor that is not eligible for enhancement. *See* section 577.010.2(1), (2).

The result reached in this case is discouraging in light of the strong suggestion in the admitted MULES records that Nowicki has disrespected and ignored Missouri laws proscribing alcohol-related traffic offenses on numerous occasions, including some not addressed in this Opinion because not raised by the State at trial. But no amount of angst on this court's part can overcome the State's failure to adduce proper evidence sufficient to protect the constitutional right of a defendant to proof beyond a reasonable doubt as a condition of a finding of guilt. As it did in connection with establishing Nowicki's 2005 conviction for driving while intoxicated, the State could have offered additional evidence

22

into evidence (such as police reports and a copy of the underlying traffic citation)[14] to establish facts supporting a reasonable inference that Nowicki's conduct at the time of the 1986, 1990, and 1994 offenses constituted "driving" as defined at the time of his present offense. The State did not do so. In light of the holdings in *Shepherd*, the State failed to sustain its burden to establish beyond a reasonable doubt that the offense of driving while intoxicated committed by Nowicki on March 19, 2019, is subject to enhancement.

## Conclusion

The Judgment is affirmed insofar as the convictions and sentences imposed for failure to drive on the right half of the roadway and for operating a motor vehicle without maintaining financial responsibility. The Judgment of conviction and sentence on the charge of committing the class C felony of driving while intoxicated as a chronic offender in violation of section 577.010 is vacated. This case is remanded with instructions to the trial court to enter a judgment reflecting Nowicki's guilt of the class B misdemeanor of driving while intoxicated in violation of section 577.010, and for resentencing on that charge accordingly.

_____
Cynthia L. Martin, Judge

All concur

---

[14]See, for example, *State v. Golden*, No. ED110113, 2023 WL 1112251, at \*4-9 (Mo. App. E.D. Jan. 31, 2023) (subject to post-opinion motions), where the state did not merely admit a defendant's MULES driving record to establish qualifying IRTOs, but also admitted a uniform complaint and summons to provide factual details about the defendant's conduct when he was charged in 1996 with driving while intoxicated, and a uniform citation to provide factual details about the defendant's conduct when he was charged in 2007 with driving while intoxicated in violation of a municipal ordinance. The Eastern District noted that unlike in *Shepherd*, where the state admitted only a driving record in an effort to establish qualifying IRTOs, the charging documents admitted along with Golden's MULES driving record were sufficient to permit the trial court to reasonably infer that the defendant was "driving" at the time of the underlying offenses as that term was defined at the time of the offense for which enhancement was being sought. *Id.*